In *Rodriguez v. State*, 744 S.W.2d 361, 364 (Tex.App.—Corpus Christi 1988, no pet.), the court held that while on appeal from an assault conviction, a condition of bail that appellant stay away from and not communicate with his ex-wife was reasonable. The court reasoned that if the appellant did so it "is likely to have an impact on the defendant which would adversely affect his likelihood of appearance or which would increase the likelihood of his committing another offense." *Id.* The court went on to say:

**T.G., Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–99–00876–CV.**

Court of Appeals of Texas,
Dallas.

Nov. 8, 1999.

Darla McLeroy, Crandall, for Appellant.

Todd Alan Hoodenpyle, Asst. Dist. Atty., Kaufman, for Appellee.

Before Justices LAGARDE, JAMES, and ROACH.

## OPINION

Opinion By Justice ROACH.

In this case, we must decide whether there is clear and convincing evidence to support T.G.'s court-ordered commitment to Terrell State Hospital for no more

than ninety days. After reviewing the record, we conclude there is not. Accordingly, we reverse and render.[1]

The court reporter's record of the commitment hearing contains six pages of testimony; of that, three are dedicated to the State's sole witness, Dr. Methner, who was not otherwise identified.[2] Dr. Methner testified he examined T.G. within the last thirty days, found her to be mentally ill, and the diagnosis to be "psychosis NOS." Psychosis NOS is not defined or otherwise explained. In his brief testimony, Dr. Methner stated that he had "concerns about harm to herself" and that she would continue to deteriorate. He further testified: "And she, according to the reports I got, was acting bizarrely. And there was a concern that she was leaving gas burners on the stove on, and not being aware of that. And people had to make sure they were off and there was proper aeration before there was any kind of matches or cigarettes in the area."

Dr. Methner further testified that this was T.G.'s first admission to Terrell State Hospital, although she had a "history of mental illness going back to '90 or '91 in which she had a similar response." Dr. Methner testified that, when he talked to T.G., she said she was not mentally ill. He said she has a "bizarre history ... of thinking of a mail carrier as a responsible person for her" and that "she's in the military, and military doctors knew her, and they were the ones that had to be contacted." When asked if there was any verification that T.G. is in fact in the military, Dr. Methner replied, "None that we're able to verify at this time."

Dr. Methner's testimony concluded with the following:

[STATE'S ATTORNEY]: In your opinion, as a result of this mental illness, will this person, if not treated, continue to suffer severe and abnormal mental, emotional or physical distress and continue to experience deterioration of her ability to function independently?

[DR. METHNER]: She will, due to impaired insight, impaired judgment, impaired cognition, fixated thinking around military orientation and denial.

[STATE'S ATTORNEY]: In your opinion, is this person unable to make a rational and informed decision as to whether to submit to treatment?

[DR. METHNER]: She is unable to for the same above-mentioned reasons.

[STATE'S ATTORNEY]: Other than those already stated, are there any other symptoms or behavior of this person which form the basis of your opinion?

[DR. METHNER]: These are the main ones. When I talked to her, she was still disorganized, hostile. Had no insight, and had no appropriate reason why she should be kept at Terrell. Felt she was harassed and was wronged.

[STATE'S ATTORNEY]: What is the least restrictive, appropriate and available setting for treatment for this patient at this time?

[DR. METHNER]: In my clinical opinion, inpatient psychiatric care, Terrell State Hospital for a period not greater than 90 days.

T.G.'s attorney did not cross-examine Dr. Methner, and the State rested after his testimony without presenting any other testimonial or documentary evidence.

T.G. briefly addressed the court and made reference to military service with the United States Air Force and Army. Although her statement is unclear, it appeared that she believed the information given about her was false and said she had

---

1. Although the ninety-day period has expired, the mootness doctrine does not apply to appeals of mental health commitments such as this. *State v. Lodge,* 608 S.W.2d 910, 912 (Tex.1980).

2. In her brief, T.G. identifies Dr. Methner as the staff psychiatrist at Terrell State Hospital. Likewise, the clerk's record contains a Physician's Certificate of Dr. John P. Methner. Dr. Methner signed the certificate as staff psychiatrist.

"turned information over to the United States Air Force and the U.S. Embassy." Under cross-examination by the State, T.G. said she enlisted in the army in July 1987 and entered the air force in 1985. She said she was stationed at Fort Pierce, Colorado, but said she could not give out further military information. She said the proceedings were "an inconvenience" and she had been "brought in here against [her] will."

Immediately after T.G.'s testimony, the trial court determined it was in her best interest to be held at the state hospital for up to ninety days. In the judgment, the court, in accordance with the statute, found: (1) T.G. is mentally ill; (2) as a result of the mental illness, she is likely to cause serious harm to herself or others; or (3) if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of her ability to function independently; and (4) T.G. is unable to make a rational and informed decision as to whether or not to submit to treatment. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon Supp.1999).

Before a mentally ill patient can be ordered confined to a hospital on a temporary basis, the State must establish by clear and convincing evidence at least one of three criteria set forth in the mental health statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (Vernon Supp. 1999). Here, the judge made findings on all three statutory criteria. In three points of error, T.G. complains the evidence is both legally and factually insufficient to support those findings.

■ To be clear and convincing under the statute, the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm either (1) the likelihood of serious harm to the proposed patient or others or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *See* TEX. HEALTH & SAFETY CODE

ANN. § 574.034(d) (Vernon Supp.1999). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam).

■ In this appeal, T.G. challenges the legal and factual sufficiency of the evidence to support the trial court's findings that she is likely to cause serious harm to herself or others or that she would continue to experience deterioration of her ability to function independently. In reviewing no evidence complaints in mental health commitments, we must only review the evidence favorable to the court's judgment; in reviewing factual sufficiency complaints, we must review all the evidence to determine if it was sufficient to produce a firm belief or conviction in the fact finder of the allegations pleaded. *Broussard v. State,* 827 S.W.2d 619, 620 (Tex.App.-Corpus Christi 1992, no writ).

After reviewing the sparse record in this case, we conclude there was no evidence of a recent overt act or continuing pattern of behavior to show T.G. was likely to cause harm to herself or others or to show the deterioration of her ability to function. The only evidence of an "overt act" that we can glean from the record was a reference to T.G. leaving the gas burners on and not being aware of it. With respect to that testimony, Dr. Methner testified only that there was a "concern" that T.G. had done so and, when asked whether the incident in fact occurred, Dr. Methner simply replied that "[i]t was in the report that she was picked up for that, previous to 4–23–99. So it would have been within that given period of days." From this testimony, we cannot ascertain when or if such an incident even occurred, much less the circumstances. Consequently, we do not consider it any evidence of an overt act.

■ Further, there is no evidence in the record of any continuing pattern of

behavior to show T.G. was likely to cause harm to herself or others or that her ability to function independently would continue to deteriorate. As is reflected above, Dr. Methner testified T.G. was mentally ill and diagnosed her illness as "psychosis NOS." Dr. Methner neither defined nor explained his diagnosis and was never asked to do so by the State, T.G.'s attorney, or the judge. But expert diagnosis of mental illness alone is not sufficient to confine a patient for compulsory treatment. *See Mezick v. State,* 920 S.W.2d 427, 430 (Tex.App.-Houston [1 st Dist.] 1996, no writ). Expert opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *Id.* Here, Dr. Methner did little more than testify to the conclusions required by the statute. For instance, he testified that her ability to function independently would continue to deteriorate "due to impaired insight, impaired judgment, impaired cognition, fixated thinking around military orientation and denial." Dr. Methner failed to explain these medical conclusions, what facts they were based on, and how they generally affect T.G.'s ability to function on a day-to-day basis without imposing court-ordered mental health services. *See Broussard,* 827 S.W.2d at 622. His testimony that T.G. had some unexplained history of mental illness, thought a mail carrier was responsible for her, and believed she was in the military suffers the same fatal flaw. Perhaps T.G. does suffer mental distress, but evidence which merely reflects that an individual is mentally ill is no evidence that the statutory standard has been met. *Id.* Just as importantly, psychotic behavior alone is insufficient to justify commitment on the grounds of mental distress and the deterioration of the ability to function independently. *Id.* Moreover, it is no evidence of a continuing pattern of behavior that tends to confirm the likelihood of serious harm to herself or others.

Accordingly, based on a review of the evidence at the commitment hearing, we conclude the trial court could not have properly made the findings it did by clear and convincing evidence because there was no evidence of a recent overt act or continuing pattern of behavior that tended to confirm those findings. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d)(1) & (2) (Vernon Supp.1999). We therefore sustain T.G.'s points of error one, two, and three.

■ In reaching our decision in this case, we are disturbed by the perfunctory manner in which the State prosecuted this involuntary commitment. Just as disturbing is the quantum of evidence determined by the trial court to be clear and convincing so that this woman was deprived of her liberty for up to ninety days. An involuntary commitment to a mental hospital after a finding of probable danger to oneself or others constitutes a significant deprivation of liberty and can also engender adverse social consequences to the person committed. *Addington v. Texas,* 441 U.S. 418, 425–26, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979). For these reasons, it is not something our courts and prosecutors should take lightly. Requiring a standard of proof higher than the usual preponderance-of-the-evidence standard reflects the "value society places on individual liberty." *Id.* at 425, 99 S.Ct. 1804. The higher standard of clear and convincing evidence is intended to allocate the risk of error between litigants and to indicate the relative importance attached to the ultimate decision. *Id.* at 423, 99 S.Ct. 1804.

In this case, the system failed, and there is nothing this Court can do to rectify the fact that T.G. was confined against her will on less evidence than is required by statute. Unfortunately, all we can do is reiterate the level of proof required before ordering a person's involuntary commitment and remind mental health prosecutors and judges that anything less will result in a reversal.

We reverse the trial court's judgment and render judgment denying the State's

petition for temporary court-ordered mental health services.