NO. 12-04-00236-CV
 
IN THE COURT OF APPEALS

TWELFTH COURT OF APPEALS DISTRICT

TYLER, TEXAS


§APPEAL FROM THE 

THE STATE OF TEXAS FOR THE
BEST INTEREST AND PROTECTION          §     COUNTY COURT AT LAW OF
OF M.B.S.

§CHEROKEE COUNTY, TEXAS




MEMORANDUM OPINION
            Appellant M.B.S. appeals from an order of commitment for temporary inpatient mental
health services. After a hearing without a jury, the trial court ordered M.B.S. committed to Rusk
State Hospital for a period not to exceed ninety days. M.B.S. asserts the evidence is legally and
factually insufficient to support this order. We affirm.
Background
            On July 1, 2004, the State filed an application for court-ordered temporary mental health
services requesting that the trial court commit M.B.S. to Rusk State Hospital for a period not to
exceed ninety days. The State supported its application with a certificate of medical examination
for mental illness, prepared by Dr. Troy Caldwell. Dr. Caldwell examined M.B.S. on June 29 and
diagnosed him as suffering from schizoaffective disorder, bipolar type. In his physician’s certificate,
Dr. Caldwell stated that M.B.S. is mentally ill, is likely to cause serious harm to others, and is
suffering severe and abnormal mental, emotional, or physical distress, is experiencing substantial
mental or physical deterioration of his ability to function independently, which is exhibited by his
inability, except for reasons of indigence, to provide for his basic needs, including food, clothing,
health, or safety, and is unable to make a rational and informed decision as to whether or not to
submit to treatment.
            At a hearing held on July 7, Dr. Caldwell testified, first reiterating that M.B.S. is mentally
ill, suffering from schizoaffective disorder, bipolar type. M.B.S. told health care professionals upon
his arrival to the hospital that he had been treated with various medications for a history of several
suicide attempts and depression. He also believed the doctors were lying to him at the hospital
because God told him he did not need to be in the program. Dr. Caldwell believes that M.B.S. is
likely to cause harm to others based upon M.B.S.’s statements showing paranoid and delusional
thoughts – that the doctors were lying, they were communicating to his family and not to him, and
they were telepathically communicating hostile thoughts. M.B.S. threatened to kill and harm others
because of these delusions. 
            M.B.S. also claims that he personally knows Governor Perry, has nuclear weapons,
communicates with God, and should be released immediately from prison because God told him he
did not belong there. Further, M.B.S. said that he saw officers spitting in his food and through
“technical conversations” they threatened his life. During the interview, M.B.S. accused Dr.
Caldwell of being hostile toward him telepathically. Dr. Caldwell stated that M.B.S. “said this with
an angry edge to his voice, and my reaction to him is that if he had not been in cuffs or if he had felt
at all trapped by me in some situation, he would have come out swinging. . . . . In the street, he could
have done that to anyone.” M.B.S. also claims to communicate telepathically with various famous
people as well as important crime families. He expressed anger because he told the doctors to warn
various people but they had refused.
            M.B.S. stated he had a nuclear weapon and that he would use it to destroy the doctors once
released from prison. The treating physician noted that M.B.S. had grandiose thoughts, paranoid
delusions, increased psycho-motor activity, pressured speech, and made threats to kill others. 
M.B.S. was placed on a higher security status (level I) as recently as June 28 based on his threats to
harm others, his hostile interactions, and his paranoid and grandiose delusions.
            On July 7, the trial court entered an order of temporary inpatient mental health services after
determining that the evidence supports the allegations that M.B.S. is mentally ill, is likely to cause
serious harm to others, will continue to suffer severe and abnormal mental, emotional or physical
distress if not treated, will continue to experience deterioration of his ability to function
independently, and is unable to make a rational and informed decision as to whether or not to submit
to treatment. The trial court ordered M.B.S. committed to Rusk State Hospital for a period not to
exceed ninety days. 
Sufficiency of the Evidence
            In his sole issue, M.B.S. asserts the evidence is neither legally nor factually sufficient to
support the order of commitment. He complains that the State did not present evidence of an overt
act or a continuing pattern of behavior to support the commitment.



Standard of Review
            In a legal sufficiency review where the burden is clear and convincing, the reviewing court
must consider all of the evidence in the light most favorable to the finding to determine whether a
reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In
re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002). The reviewing court must assume that the factfinder
resolved disputed facts in favor of its finding if a reasonable factfinder could do so. Id. A court
should disregard all evidence that a reasonable factfinder could have disbelieved or found to have
been incredible. Id.
            In addressing a factual sufficiency challenge, we must consider all of the evidence in the
record, both that in support of and contrary to the trial court’s findings. In re C.H., 89 S.W.3d 17,
27-29 (Tex. 2002). This court must give due consideration to evidence that the factfinder could
reasonably have found to be clear and convincing. Id. at 25. We must determine whether the
evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth
of the State’s allegations. Id. We must consider whether disputed evidence is such that a reasonable
trier of fact could not have reconciled that disputed evidence in favor of its finding. In re J.F.C.,
96 S.W.3d at 266. Appellate courts retain deference for the constitutional roles of the factfinder. 
In re C.H., 89 S.W.3d at 26. The trier of fact is the exclusive judge of the credibility of the
witnesses and the weight to be given their testimony. See id. at 27; In re J.J.O., 131 S.W.3d 618,
632 (Tex. App.–Fort Worth 2004, no pet.).
Involuntary Commitment Order
            The trial judge may order a proposed patient to receive court-ordered temporary inpatient
mental health services if the judge or jury finds, from clear and convincing evidence, that the
proposed patient is mentally ill and, as a result of the mental illness, she is likely to cause serious
harm to herself, is likely to cause serious harm to others, or is (1) suffering severe and abnormal
mental, emotional, or physical distress, (2) experiencing substantial mental or physical deterioration
of her ability to function independently, which is exhibited by her inability, except for reasons of
indigence, to provide for her basic needs, including food, clothing, health, or safety, and (3) unable
to make a rational and informed decision as to whether or not to submit to treatment. Tex. Health
& Safety Code Ann. § 574.034(a) (Vernon 2003). To be clear and convincing under the statute,
the evidence must include expert testimony and, unless waived, evidence of a recent overt act or a
continuing pattern of behavior that tends to confirm either the likelihood of serious harm to the
proposed patient or others or the proposed patient’s distress and the deterioration of her ability to
function. Tex. Health & Safety Code Ann. § 574.034(d) (Vernon 2003). 
            The State provided expert testimony explaining that M.B.S. is mentally ill, suffering from
schizoaffective disorder, bipolar type. However, expert testimony confirming mental illness,
standing alone, will not support an involuntary commitment. E.g., T.G. v. State, 7 S.W.3d 248, 252
(Tex. App.–Dallas 1999, no pet.). M.B.S. had a history of suicide attempts and had suffered from
and been treated for depression. Dr. Caldwell testified about M.B.S.’s paranoid thoughts and
delusions that he has nuclear weapons, that he knows various famous people, and that both doctors
and officers communicate threats and hostile thoughts telepathically to him. He also testified that
M.B.S. was placed on higher security based on his threats of harm to others while in the hospital. 
Dr. Caldwell expressed his opinion that M.B.S. would likely act on his delusions if he were not in
a controlled environment. While at the hospital, M.B.S. continued to issue threats to the staff. This
testimony provides evidence of a continuing pattern of behavior that tends to confirm that M.B.S.
is likely to cause serious harm to others. The trial court could have disbelieved M.B.S.’s testimony
to the contrary. See In re J.F.C., 96 S.W.3d at 266.
            The State has the burden of establishing by clear and convincing evidence only one of the
additional requirements listed in section 574.034(a)(2). Mezick v. State, 920 S.W.2d 427, 430 (Tex.
App.–Houston [1st Dist.] 1996, no writ). The trial court found that M.B.S. was likely to cause
serious harm to others. Considering all the evidence in the light most favorable to the findings, we
conclude a reasonable trier of fact could have formed a firm belief or conviction that this finding was
true. See In re J.F.C., 96 S.W.3d at 266. Therefore, the evidence is legally sufficient to support the
trial court’s order. See id. 
            In addressing M.B.S.’s factual sufficiency complaint, we consider the evidence the factfinder
could reasonably have found to be clear and convincing. In re C.H., 89 S.W.3d at 25. There is
some evidence that M.B.S. can take care of his basic daily needs and there was no evidence that
M.B.S. had injured anyone while at the hospital. However, Dr. Caldwell also stated that M.B.S. has
made various threats – that he has a nuclear weapon and will use it to kill “you all” and that he
threatened harm to staff members and the doctors. Additionally, Dr. Caldwell testified to the angry
edge to M.B.S.’s voice during the examination, his increased psycho-motor activity, and his
“pressured speech.” The doctor testified that M.B.S. suffers from grandiose thoughts, paranoid
delusions, and has made several threats to kill others. 
            The trial court was entitled to disbelieve testimony contrary to the State’s position. See In
re C.H., 89 S.W.3d at 27. Accordingly, in light of the entire record, the evidence that the trial court
could not have credited in favor of its findings is not so significant that it could not reasonably form
a firm belief or conviction that M.B.S. is mentally ill and is likely to harm others. See id. Thus, the
evidence is factually sufficient to support the trial court’s findings. Because we hold the evidence
is both legally and factually sufficient to support the trial court’s order, we overrule M.B.S.’s issue.
Disposition
            Having overruled M.B.S.’s sole issue, we affirm the trial court’s order of commitment for
temporary inpatient mental health services. 

                                                                                                     JAMES T. WORTHEN 
                                                                                                                 Chief Justice


Opinion delivered April 29, 2005.
Panel consisted of Worthen, C.J., Griffith, J. and DeVasto, J.




(PUBLISH)