**The STATE of Texas for the Best Interest and Protection of T.M.**

No. 05–11–01671–CV.

Court of Appeals of Texas, Dallas.

March 13, 2012.

Lashica Jaunnette Wa Barnes, Asst. Public Defender, Dallas, for Appellant.

Melanie Barton, Asst. Dist. Atty., Dallas, for State.

Before Chief Justice WRIGHT and Justices FRANCIS and LANG–MIERS.

## OPINION

Opinion By Chief Justice WRIGHT.

T.M. appeals from an order of commitment for temporary mental health services as an in-patient. In ten issues, T.M. asserts generally that (1) the evidence is legally and factually insufficient to support findings that she was likely to cause serious harm to herself or others; her ability to function was deteriorating because of mental distress; and she was unable to make a rational decision as to whether to submit to treatment; and (2) the trial court abused its discretion by ordering her to receive mental health services as an inpatient rather than on an outpatient basis. We overrule T.M.'s issues and affirm the trial court's judgment of involuntary commitment.

## Background

Around 11:00 p.m. on November 15, 2011, T.M. called police after her boyfriend would not let her leave with their infant. The boyfriend told T.M. that he did not trust her to leave with the infant. The police did not believe the boyfriend was trying to harm either T.M. or the infant. Because T.M. was behaving in a bizarre manner, police took her to Parkland Hospital for evaluation. The police report noted T.M. stated that she was on the "Jesus diet" and that she felt they were overfeeding her infant who was just a few weeks old.

At Parkland, Rosemary Wright, D.O. evaluated T.M. on November 16, 2011. Dr. Wright completed a certificate of examination, noting a diagnosis of psychosis, n.o.s. T.M. was placed under an order of protective custody that same day. Dr. Wright also noted that T.M. called 911 from Parkland's psychiatric emergency room telling the dispatcher that she was in a "life or death situation." She also noted that T.M. was aggressive, yelling at the staff, refusing medications, and had rapid, pressured speech.

Dr. Zahra T. Ali Mohammed examined T.M. on November 22, 2011. She diagnosed T.M. with bipolar 1 disorder, severe with psychotic features, postpartum onset. She noted that T.M. was paranoid, delusional, and noncompliant with medications. The trial court conducted a hearing and granted the requested relief. T.M. timely appealed the judgment of involuntary commitment.

## Standard of Review

The trial court must find by clear and convincing evidence the statutory criteria for a commitment order. *See A.S. v. State,* 286 S.W.3d 69, 71 (Tex.App.-Dallas 2009, no pet.); Tex. Health & Safety Code Ann. § 574.034(a) (West 2010). Clear and

convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam). Because the State's burden of proof is clear and convincing evidence, we apply a heightened standard of review. *In re C.H.,* 89 S.W.3d 17, 25 (Tex.2002). In reviewing a legal sufficiency claim, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002). When reviewing factual sufficiency, we must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, a fact finder could reasonably form a firm conviction or belief that the allegations in the petition were proven. *In re J.F.C.* 96 S.W.3d at 266.

### Order of Involuntary Commitment

A trial court may order temporary inpatient mental health services if it finds by clear and convincing evidence that the patient is mentally ill and at least one of three criteria results from that mental illness. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). The three criteria are: (1) the patient is likely to cause serious harm to herself; (2) the patient is likely to cause serious harm to others; or (3) the patient is suffering severe and abnormal mental, emotional, or physical distress, was deteriorating in her ability to function independently, and was unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (B) & (C)(i)-(iii) (West 2010). Section 574.034 sets forth specific requirements for clear and convincing evidence. The evidence must include expert testimony and, unless waived, evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the patient or others; or (2) the patient's distress and the deterioration of the patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West 2010). The recent overt act or continuing pattern of behavior must relate to the criteria on which the judgment is based. *T.G. v. State,* 7 S.W.3d 248, 252 (Tex.App.-Dallas 1999, no pet.). The expert's opinions and recommendations must be supported by a showing of the factual bases on which they are grounded. *Id.* In this case, the trial judge found that all three criteria for committing a mentally ill patient were met.

T.M. complains the evidence is legally and factually insufficient to support the trial court's finding that all three criteria for commitment were met. She also complains that the trial court abused its discretion by not allowing her to receive treatment on an outpatient basis. At the time of the commitment hearing, her infant was approximately four weeks old. T.M. had called the police when her boyfriend would not let her leave with the baby. She had just been released from John Peter Smith Hospital for psychiatric concerns the day before.

■ At the commitment hearing, Dr. Mohammed testified that T.M. has bipolar 1 disorder with psychotic features and postpartum onset. She described T.M. as very irritated, hyper-religious, and delusional about herself, her parents, and the hospital staff. T.M. thinks some of the staff are trying to kill her. T.M. sometimes sings loudly in the middle of the night. She asks elderly patients why they need medication. She is unable to appropriately judge situations and, as a result,

may misinterpret a situation and harm herself or others. Dr. Mohammed said that T.M. takes her medication intermittently. T.M. sometimes needs antipsychotic medication to help her sleep. She testified that T.M. is unable to make a rational and informed decision about whether to submit to treatment.

Barbara Jean Dickson, T.M.'s mother, testified that if T.M. were released to live with her, she would be responsible for her. Dickson said the hospital was killing T.M. Dr. Mohammed did not feel outpatient treatment was a viable option because she did not think T.M.'s family provided a good safety net. She said T.M. has a "very frictional relationship with her mother."

T.M. testified at the hearing. At first she said she will not take medication but later said she would even though she did not want to take it. She said her mother and boyfriend do not get along. She said the staff was aware of the hearing, and for that reason, they would not let her sleep that night. T.M. said that she shakes because she is scared but it was not because of Parkland. She testified the staff at Parkland makes her pick between who she loves. T.M. also said she tries to escape every night.

Based on the entire record, we hold a reasonable fact finder could resolve the disputed evidence in favor of the trial court's findings and could reasonably form a firm belief or conviction that T.M. is mentally ill and as a result of that illness, as confirmed by her recent overt acts and continuing pattern of behavior, there is likelihood of serious harm to herself or others. We further hold that the trial court did not abuse its discretion in not allowing T.M. to be treated on an outpatient basis. Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's judgment. We overrule T.M.'s issues and affirm the judgment of involuntary commitment.