**AFFIRM; and Opinion Filed December 16, 2013.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-13-01079-CV
_____

### THE STATE OF TEXAS FOR THE BEST INTEREST
### AND PROTECTION OF M.P.

**On Appeal from the Probate Court No. 3**
**Dallas County, Texas**
**Trial Court Cause No. MI-13-70592**

## OPINION

Before Justices Bridges, Fillmore, and Lewis
Opinion by Justice Lewis

M.P. appeals from an order of commitment for temporary inpatient mental health services. In nine issues, M.P. asserts generally that the evidence is legally and factually insufficient to support findings that she was likely to cause serious harm to herself or others; her ability to function was deteriorating because of mental distress; and she was unable to make a rational decision as to whether to submit to treatment. We overrule M.P.'s issues and affirm the trial court's judgment of involuntary commitment.

## BACKGROUND

On July 3, 2013, M.P. was detained on a peace officer application for emergency detention. According to the application, M.P. was picked up at the Greyhound Bus Station in Dallas, Texas. She was wandering around, suffering from amnesia, and did not know her name,

her date of birth, or why she was at the bus station. She was agitated and yelling. The application indicated she was being approached by several males attempting to take advantage of her. M.P. was initially transported to Green Oaks Hospital, where she was examined by Dr. Paul Schneider. In Dr. Schneider's certificate of medical examination, he diagnosed M.P. with a psychotic disorder, not otherwise specified (NOS). He stated she had pressured speech and flight of ideas. He also noted she was sunburned and possibly dehydrated. In addition, he noted she had poor insight and judgment. It was Dr. Schneider's opinion that she was at risk of harm to herself and deteriorating in her ability to function independently. On July 4, 2013, the State filed an application for court-ordered temporary mental health services, attaching Dr. Schneider's certificate of medical examination. At a hearing on July 5, 2013, the trial court ordered M.P. detained in protective custody, pending a probable cause hearing. M.P. was transferred to Terrell State Hospital on July 8, 2013.

On July 22, 2013, Dr. Margaret Weidow, Staff Psychiatrist at Terrell State Hospital, examined M.P. and completed a physician's certificate of medical examination for mental illness. Dr. Weidow also diagnosed M.P. with a psychotic disorder, NOS. Dr. Weidow reported M.P. was agitated and disorganized, with bizarre behavior, poor judgment, and poor insight. She noted that M.P. claimed to have had multiple babies cut out of her, and had her footprints removed. She also stated M.P. was responding to internal stimuli, becoming increasingly agitated, and screaming and crying at the top of her lungs that she was dying. Following her examination of M.P., Dr. Weidow filed an application for an order to administer psychoactive medication.

On July 23, 2013, a hearing took place. At the time of the hearing, certificates of medical examination for mental illness from Dr. Schneider and Dr. Weidow were on file with the court. The State recommended M.P. be committed to Terrell State Hospital. Dr. Weidow testified on

–2–

behalf of the State; M.P. testified on her own behalf. Dr. Weidow testified that M.P. was a harm to herself because of her extreme disorganization. She rated M.P.'s ability to function independently as poor, although she acknowledged that M.P. was eating and sleeping. M.P. testified that her father lived in Wichita, Kansas, and she wanted to go to Wichita to stay with him. M.P. explained she was screaming because the hospital staff was trying to give her medication so they could have sex with her. M.P. testified she did not need psychoactive medication. M.P. also testified she needed the voices in her head to help her with her creative writing.

At the conclusion of the hearing, the court found that M.P. was likely to cause serious harm to herself, that her ability to function was deteriorating because of mental distress, and that she was unable to make a rational decision whether to submit to treatment. The court signed a judgment, finding that court-ordered temporary mental health services for M.P. would be accomplished on an inpatient basis for a period of time not to exceed ninety days.[1] The court further ordered that M.P. submit to treatment at Terrell State Hospital. M.P.'s motion for rehearing and motion for new trial were denied on July 31, 2013. This appeal followed.

**BURDEN OF PROOF AND STANDARD OF REVIEW**

A trial court may order temporary inpatient mental health services if it finds by clear and convincing evidence that the proposed patient is mentally ill and also meets at least one of the additional criteria set forth in section 574.034(a)(2) of the Texas Health and Safety Code. *See State ex rel. T.M.*, 362 S.W.3d 850, 852 (Tex. App.—Dallas 2012, no pet.); *see also* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2) (West Supp. 2013). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a

---

[1] Although the ninety-day commitment period has expired, the mootness doctrine does not apply to appeals of mental health commitments such as this. *State v. Lodge*, 608 S.W.2d 910, 911 (Tex. 1980); *T.G. v. State*, 7 S.W.3d 248, 250 (Tex. App.—Dallas 1999, no pet.).

firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). Because the State has the burden of establishing by clear and convincing evidence that the proposed patient meets the requirements of section 574.034(a)(2), we apply a heightened standard of review. *State ex rel. T.M.*, 362 S.W.3d at 852 (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). In reviewing a legal sufficiency or no evidence complaint, we look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002); *State ex rel. T.M.*, 362 S.W.3d at 852. In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We consider the entire record in determining whether the evidence is such that a fact finder could reasonably form a firm belief or conviction as to the truth of the State's allegations. *Id.*; *see also K.E.W. v. State*, 333 S.W.3d 850, 855 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

## DISCUSSION

A trial court may order temporary inpatient mental health services if it finds by clear and convincing evidence that the patient is mentally ill and at least one of three criteria results from that mental illness. The three criteria are: (1) the patient is likely to cause serious harm to herself; (2) the patient is likely to cause serious harm to others; or (3) the patient is suffering severe and abnormal mental, emotional, or physical distress, is deteriorating in her ability to function independently, and is unable to make a rational and informed decision as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (B) & (C)(i)-(iii). Section 574.034 sets forth specific requirements for clear and convincing evidence. To be clear and convincing, "the evidence must include expert testimony and, unless waived,

evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function." TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (West Supp. 2013). The recent overt act or continuing pattern of behavior must relate to the criteria on which the judgment is based. *State ex rel. T.M.*, 362 S.W.3d at 852 (citing *T.G. v. State*, 7 S.W.3d 248, 252 (Tex. App.—Dallas 1999, no pet.)). "A proposed patient's words are overt acts within the meaning of Section 574.034(d)." *State v. K.E.W.*, 315 S.W.3d 16, 22 (Tex. 2010). Thus, statements made by M.P. can be relevant both to determining whether she is mentally ill and also to predicting what actions she might take in the future as a result of that mental illness. *Id.*; *see also State ex rel. E.D.*, 347 S.W.3d 388, 392–93 (Tex. App.—Dallas 2011, no pet.).

In this case, the trial judge found the first and third criteria for committing a mentally ill patient were met. M.P. argues there is no evidence or the evidence is legally and factually insufficient to support the trial court's findings that she was likely to cause serious harm to herself or others; that her ability to function was deteriorating because of mental distress; and that she was unable to make a rational decision as to whether to submit to treatment. We note that the trial court did not find that the second criteria for committing a mentally ill patient was met; thus, the trial court did not find, and we do not consider, whether M.P. was likely to cause serious harm to others.

With respect to the first criteria, Dr. Weidow testified that it was her opinion that as a result of her mental illness, M.P. was likely to cause serious harm to herself because of her extreme disorganization. In her certificate of medical examination, Dr. Weidow diagnosed M.P. as having a psychotic disorder, NOS. At the hearing, Dr. Weidow testified that she was working on another diagnosis and suspected that M.P. suffered from a form of schizophrenia. Dr.

Weidow related the circumstances under which M.P. was picked up from the Greyhound Bus Station and explained that M.P. could not give a clear history of the circumstances leading to her detention by the police. M.P. told Dr. Weidow that the police ordered her detained because she was sun-tanning. M.P. refused to give hospital personnel her address or telephone number; she claimed her identification and birth certificate were fakes. Dr. Weidow testified that M.P. does not understand why she is at Terrell State Hospital, and reports having auditory hallucinations and hearing multiple voices. Since M.P. has been at Terrell State Hospital, she has refused to take medication and has become increasingly agitated, pacing in and out of the bathroom, splashing water on her hair and clothing, screaming at the top of her lungs, and claiming she is dying. As a result of M.P.'s conduct, hospital personnel found it necessary to administer emergency medication to M.P. Dr. Weidow testified that she believes M.P. is likely to cause serious harm to herself because M.P. is unable to function well enough to behave at any location. Dr. Weidow stated that M.P.'s disorganization manifests in the form of paranoid delusions. Dr. Weidow testified she does not believe M.P. is suicidal, and on cross-examination, Dr. Weidow stated that since M.P. has been at Terrell State Hospital, M.P. has not physically injured herself. Dr. Weidow acknowledged that M.P. was eating and sleeping, although she rated M.P.'s personal hygiene as poor. Dr. Weidow stated, "the danger to herself is her extreme disorganization."

With respect to the third criteria, Dr. Weidow testified that in her opinion, M.P. is suffering severe and abnormal mental, emotional, and physical distress; is deteriorating in her ability to function independently; and cannot make a rational and informed decision as to whether to submit to treatment. Dr. Weidow testified it was in M.P.'s best interest to receive inpatient treatment at this time. She stated there were no less restrictive alternatives available for treating M.P. because M.P. did not understand the nature of her illness and the necessity for

treatment. Dr. Weidow elaborated that M.P. refused to answer questions about her identity, family, and medical history, including prescribed medications. Dr. Weidow has been unable to contact M.P.'s family because M.P. refuses to provide that information. Dr. Weidow stated she believes M.P. has been on antipsychotic medications in the past and is "moving between places trying to avoid being on medication." Although M.P. told hospital personnel that medication has caused her to have multiple strokes, Dr. Weidow testified that M.P. has had a physical examination and there is no indication that M.P. has ever had a stroke. She stated that M.P.'s personal hygiene practices consisted of screaming and splashing water on her hair and clothing. Dr. Weidow detailed the following reasons given by M.P. for refusing medication: medication causes her to have strokes, medication causes her to lose her hair, and medication takes away the voices in her head. Dr. Weidow expressed hope that if M.P. were treated with antipsychotic medication, M.P. would be able to think more rationally.

M.P. testified that she does not want to stay in the hospital but wants to go home to Wichita, Kansas. M.P. stated she had gone to Albuquerque to visit a boyfriend. M.P. also admitted that she had been in the University of New Mexico Hospital for psychiatric treatment and was forced to take medication. M.P. was taking the bus from Albuquerque, New Mexico, back to Wichita, Kansas when the bus made a rest stop in Dallas. When asked about her actions at the Greyhound Bus Station, M.P. denied screaming and said that a woman at the bus station called the police because she was jealous of M.P. When asked about her personal hygiene, M.P. testified that she takes showers. She stated that if the hospital staff thinks she neglects her personal hygiene, they should let her shave and trim her nails. M.P. testified that a nurse gave her three shots and then molested her. M.P. also testified that one of the doctors is always offering to have sex with her. When asked about her screaming, M.P. replied that she was screaming because the medical staff was trying to give her medication. She stated that she was

supposed to hear voices because they were teaching her creative writing. M.P. explained that she used to have an enormous head with a big brain but then she was given drugs and her brain got small. M.P. stated the medication caused her to have strokes and she did not know how many more strokes she could live through. She also said the medication caused her to have deep vein thrombosis. M.P. testified she is a perfectly normal 26-year-old and should not be diagnosed as schizophrenic.

Although the record is sparse, there is evidence that Dr. Weidow's expert opinions and recommendations were more than mere conclusions. *See State ex rel. E.D.*, 374 S.W.3d at 393; *see also T.G.*, 7 S.W.3d at 252 (expert diagnosis of mental illness alone not sufficient to confine patient for compulsory treatment). Moreover, Dr. Weidow's conclusions were based on more than M.P.'s refusal to take medication. *See In re Breeden*, 4 S.W.3d 782, 789 (Tex. App.—San Antonio 1999, no pet.); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi 1992, no writ). Statements made by M.P. to medical personnel and during testimony at the hearing leave no doubt that M.P. does not think she is mentally ill and does not think she needs medical treatment. Based on our review of the entire record, we conclude a reasonable fact finder could resolve the disputed evidence in favor of the trial court's findings and could reasonably form a firm belief or conviction that M.P. is mentally ill and as a result of that illness, as confirmed by her recent overt acts and continuing pattern of behavior, is likely to cause serious harm to herself, and is suffering severe and abnormal mental, emotional, or physical distress such that her ability to function independently is deteriorating and she is unable to make a rational and informed decision as to whether or not to submit to treatment. Accordingly, we overrule M.P.'s factual sufficiency challenge to the trial court's order for temporary inpatient mental health services. Further, when viewed in the light most favorable to the trial court's findings, there is legally sufficient evidence on which a reasonable trier of fact could have

formed a firm belief or conviction that as a result of M.P.'s mental illness, she is likely to cause serious harm to herself, and that she is suffering from severe and abnormal mental, emotional, or physical distress, her ability to function independently is deteriorating, and she is unable to make a rational and informed decision as to whether or not to submit to treatment. We also overrule M.P.'s no-evidence and legal sufficiency challenges to the trial court's order for temporary inpatient mental health services.

## CONCLUSION

The evidence is factually and legally sufficient to support the trial court's judgment for temporary inpatient mental health services. We therefore affirm the trial court's judgment.

/David Lewis/
DAVID LEWIS
JUSTICE

131079F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

THE STATE OF TEXAS FOR THE BEST
INTEREST AND PROTECTION OF M.P.

No. 05-13-01079-CV

On Appeal from the Probate Court No. 3,
Dallas County, Texas
Trial Court Cause No. MI-13-70592.
Opinion delivered by Justice Lewis.
Justices Bridges and Fillmore participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered this 16th day of December, 2013.

/David Lewis/

DAVID LEWIS
JUSTICE