

# NUMBER 13-25-00364-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

## THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION OF L.S. JR.

---

## ON APPEAL FROM THE PROBATE COURT
## OF HIDALGO COUNTY, TEXAS

---

## MEMORANDUM OPINION

### Before Justices Silva, Peña, and West
### Memorandum Opinion by Justice West

Appellant L.S. Jr.[1] appeals the trial court's order committing him to a mental hospital for temporary in-patient mental health services and its order directing the hospital to compel psychoactive medication. Appellant argues that the evidence is legally and

---

[1] Although not required by rule or statute, we use appellant's initials to protect his privacy in this mental health proceeding. *See, e.g., State ex rel. D.L.S.*, 446 S.W.3d 506, 510 (Tex. App.—El Paso 2014, no pet.) (referring to appellant by his initials in appeal challenging trial court's order for involuntary commitment); *State ex rel. T.M.*, 362 S.W.3d 850, 851 (Tex. App.—Dallas 2012, no pet.) (same); *see also State for C.G.*, No. 13-22-00501-CV, 2022 WL 17844128, at *1 (Tex. App.—Corpus Christi–Edinburg Dec. 22, 2022, no pet.) (mem. op.) (same).

factually insufficient to support both orders. He specifically argues that the State failed to show "a recent overt act or a continuing pattern of behavior" that tends to confirm the likelihood of serious harm to himself or substantial deterioration of his ability to function independently. Because the State presented scant and contradictory evidence at the hearing on the trial court's orders, we agree. Accordingly, we reverse and render.

## I.    BACKGROUND

On June 26, 2025, Ana Grimaldo, a therapist from the South Texas Behavioral Health Hospital (the hospital), filed an application for temporary commitment for mental health services, requesting that the trial court commit appellant to the hospital for a period not to exceed forty-five days. That same day, the State filed a motion for protective custody of appellant accompanied by a physician's certification of medical examination for temporary commitment.

In the certification, Cesar Matos-Martinez, M.D., explained that appellant was voluntarily admitted to the hospital on June 21, 2025, "due to altered mental status and paranoia that someone is under his home and that his family is trying to kill him," and he was "experiencing suicidal ideations without disclosing a plan." He also explained that while appellant signed in voluntarily for treatment, he was "refusing medications to help stabilize current symptoms." Dr. Matos-Martinez attested that appellant was diagnosed with paranoid schizophrenia, and because of his mental illness, he was likely to cause serious harm to himself. The certification stated that appellant had "active psychosis and paranoia behaviors towards family," was "refusing to provide specifics that lead to his symptoms, minimizing [his] symptoms," and was "at high risk due to his history of suicide attempt last year and inability to recognize the need for assistance." Dr. Matos-Martinez

2

attested that, if not treated, appellant "will continue to experience psychosis, paranoia[,] and suicidal ideations, leading to a mental deterioration if [appellant] is not provided with the proper treatment." And because of his past "suicide attempt and paranoid behaviors," appellant's "imminent risk to self and others will increase significantly."

On July 3, 2025, Dr. Matos-Martinez, on behalf of the State of Texas, requested an order to administer psychoactive medication to appellant. A second physician's certification of medical examination for temporary commitment was filed by Scott Joseph, MD. Dr. Joseph also diagnosed appellant with paranoid schizophrenia. He attested that appellant was likely to cause serious harm to himself because he "continues to display delusional thinking, poor insight into his current situation, and continues to be at high risk of severe decompensation." And like Dr. Matos-Martinez, Dr. Joseph attested that appellant's risk of self-harm "will increase significantly due to [appellant] having history of suicide attempt [sic] which may lead to a completion of suicide."

A hearing on both the application for temporary commitment and the motion to administer psychoactive medication commenced on July 7, 2025. At the beginning of the hearing, the trial court took judicial notice of "all contents of the Court's file, including the second physician's certificate."

The State called Dr. Matos-Martinez, and the parties stipulated to his qualifications. Dr. Matos-Martinez testified that appellant was admitted to the hospital because he was having paranoid and delusional thoughts that there were people living under his house who were planning to kill him. Dr. Matos-Martinez explained that appellant was diagnosed with "schizophrenia, paranoid type," and appellant's paranoid thoughts and delusions have not stopped since he entered the hospital. He also testified that appellant had "been

3

treated before for the same mental condition" at the hospital; however, he did not explain or elaborate further on appellant's prior treatments.

Despite the contents of his certification, Dr. Matos-Martinez testified that, to his knowledge, appellant has not expressed any suicidal ideations while at the hospital. And when asked if he had any information on appellant's prior suicide attempt, he replied, "No. I do not have that information, no." He further testified that appellant "is not aggressive, he's cooperative, he follows the rules, he doesn't require any emergency medication, [and] he doesn't make threats to anyone." He explained: "It's just the symptoms, delusions, the paranoia that is the problem, and he isn't taking any medications." On cross-examination, Dr. Matos-Martinez again testified that appellant had not voiced any suicidal ideations during his time at the hospital, nor had he tried to physically harm himself. He also testified that he believes appellant has been "compliant with other forms of treatment" like "group therapy."

When asked if appellant is likely to cause serious harm to himself unless he is further treated at the hospital, Dr. Matos-Martinez responded:

> Well, he could, yes, because he's not taking any medications. He hasn't done what we ask him to do . . . and take the medications and see how the medications start working. So we have not been able to complete that part of the process.

And when asked why he believes that appellant poses a danger to himself, he responded:

> Well, I think that he continues to have these paranoid thoughts. It might not come to any bad choice, decisions of harming himself, but so far he's not saying that, that he's going to kill himself, nothing like that. He's not doing that. Although he could later.

Dr. Matos-Martinez maintained that appellant was under "severe distress" because his delusions and paranoid thoughts cause him "a lot of anguish." He also stated that if

4

left untreated, appellant is "going to go back to the same environment, to the same ideas and delusions," and appellant "cannot function independently because of the paranoid thoughts." Dr. Matos-Martinez explained that appellant believes his delusions and paranoid thoughts are real, and "he has no insight into his condition."

Concerning the medication sought in the application for the administration of psychoactive medicine, Dr. Matos-Martinez testified that appellant has refused to take the prescribed antipsychotic medications because he "doesn't believe that medications will help." Lastly, Dr. Matos-Martinez testified that appellant cannot make a rational and informed decision as to whether to submit to treatment, there were no less restrictive means of treatment, and he believed that it was in appellant's best interest to take the medications.

The State called appellant to testify. Appellant denied that he had paranoid schizophrenia and maintained that he does not "have symptoms like that whatsoever." When asked if he believes he has a mental illness, he responded, "No ma'am. I have high blood pressure." Then the following exchange occurred:

[The State]: And so why do you believe you're in the hospital today?

[Appellant]: Because what the doctor says, that I think and what I feel. What I think, I'm living it out there in where I live. I'm the one that's living it. I'm the one that my neighbor, she says all that, what I say, and what the doctor said, that Ms. Laura Martinez Jasso, she says this to me.

[The State]: Okay. So you believe that there are people who want to harm you?

[Appellant]: Well, she says it herself, and she doesn't—she says it to me, and she sends people to the residence.

. . . .

[The State]: And you feel these people want to kill you?

5

[Appellant]:    Well, it's been going on with Laura Martinez [Jasso] since April 2022, 2023, 2024 and this year. Her friends and her harass against me. And my way of, let's say like saying something back to her is calling the law or making statements towards her, and that's what I have done, and she has made false statements against me.[2]

At the end of his testimony, appellant confirmed that he attempted suicide in July of last year by walking onto the highway and was struck by a moving vehicle. Appellant maintained, however, "[t]hat's in the past," and he does not have "symptoms like that" anymore. Instead, he insisted that "the threats and harassment" between him and Ms. Jasso have continued.

After hearing the evidence, the trial court entered an order committing appellant to the hospital for a period not to exceed forty-five days. The trial court found that appellant is mentally ill and, as a result of his mental illness, (1) "is likely to cause serious harm to himself," or (2) "will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and . . . experience deterioration of his ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment." The trial court also entered its order permitting the hospital to administer the psychoactive medication, finding that treatment with the proposed medication was in the best interest of appellant, and appellant lacked the capacity to make a decision regarding administration of said medication. This appeal followed.

---

[2] The State presented no evidence to rebut appellant's assertions that his neighbor, Ms. Jasso, had a history of threatening or harassing him. In fact, appellant's trial counsel maintained at closing that this case merely involves "a neighbor who is bullying a mentally ill man."

6

## II.    APPLICABLE LAW & STANDARD OF REVIEW

### A.    Order for Temporary Inpatient Mental Health Services

A court may order temporary inpatient mental health services only if the court finds, from clear and convincing evidence, that:

(1)    the proposed patient is a person with mental illness; and

(2)    as a result of that mental illness the proposed patient:

  (A)    is likely to cause serious harm to the proposed patient;

  (B)    is likely to cause serious harm to others; or

  (C)    is:

    (i)    suffering severe and abnormal mental, emotional, or physical distress;

    (ii)    experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

    (iii)    unable to make a rational and informed decision as to whether or not to submit to treatment.

*See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a).[3] The evidence must include expert testimony and evidence of a recent overt act or a continuing pattern of behavior that tends to confirm: (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *Id.* § 574.034(d). The recent overt act or continuing pattern of behavior shown

---

[3] The Texas Legislature amended Texas Health & Safety Code § 574.034. *See* Act of Aug. 28, 2025, 89th Leg., 2nd C.S., ch. 7, § 11B.02, section 574.034, 2025 Tex. Sess. Law Serv (effective Sept. 1, 2025). The new version of the statute went into effect after the State filed its protective order in this case and the trial court handed down the commitment order. Thus, we apply the former version of the statute. *See id.* All references to § 574.034 herein refer to the version of the statute in effect prior to the September 1, 2025.

by the State must relate to the criterion on which the judgment is based. *In re C.O.*, 65 S.W.3d 175, 181 (Tex. App.—Tyler 2001, no pet.).

**B.      Clear and Convincing Evidence**

"[D]ue process demands clear and convincing proof before the state may involuntarily confine a person in a mental institution." *In re C.H.*, 89 S.W.3d 17, 22 (Tex. 2002) (citing *Addington v. Texas*, 441 U.S. 418, 423 (1979)). As such, both orders were required to be supported by clear and convincing evidence rather than the lower preponderance of the evidence standard generally applicable to civil suits at large. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 574.106(a-1), 574.034(a); *State ex rel. D.L.S.*, 446 S.W.3d 506, 514 (Tex. App.—El Paso 2014, no pet.).

Clear and convincing evidence is that "degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State ex rel. T.M.*, 362 S.W.3d 850, 851–852 (Tex. App.—Dallas 2012, no pet.) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam)). "In evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true." *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). "We resolve disputed fact questions in favor of the finding if a reasonable fact finder could have done so, and we disregard all contrary evidence unless a reasonable fact finder could not have done so." *State ex rel. R.P.*, 511 S.W.3d 71, 76 (Tex. App.—El Paso 2014, no pet.).

"In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *State ex rel. M.P.*,

418 S.W.3d 850, 853 (Tex. App.—Dallas 2013, no pet.); *see In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The inquiry is whether the evidence, both disputed and undisputed, is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations. *In re J.F.C.*, 96 S.W.3d at 266. We must consider whether the disputed evidence is of such a nature that a reasonable factfinder could not have resolved it in favor of its finding. *Id.* "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

### III.    ANALYSIS

Appellant argues that the evidence is legally and factually insufficient to support the trial court's orders.[4]

### A.    Temporary Inpatient Commitment Order

#### 1.    Person with a Mental Illness

Appellant first challenges the trial court's finding that he is a person with a mental illness. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(1). Because we sustain both of appellant's issues below, we will assume without deciding that the evidence is legally and factually sufficient to produce in the mind of the factfinder a firm belief or conviction that appellant is a person with a mental illness. *See* TEX. R. APP. P. 47.1 ("The court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal.").

---

[4] Forty-five days have already elapsed since the trial court's orders, which means both orders have now expired. However, neither order is moot, as the mootness doctrine does not apply to appeals of mental health commitments such as this. *See State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010) (citing *State v. Lodge*, 608 S.W.2d 910, 912 (Tex. 1980)). Therefore, we will address the merits of this appeal.

9

## 2. Recent Overt Act or a Continuing Pattern of Behavior

Appellant next challenges the trial court's findings that, because of his mental illness, he is (1) likely to cause serious harm to himself and (2) experiencing substantial mental or physical deterioration of his ability to function independently. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(A), (a)(2)(C). He argues that there is no evidence of "a recent overt act or a continuing pattern of behavior" that tends to confirm the likelihood of these two elements. *See id.* § 574.034(d)(1).

### i. Harm to Self

The trial court took judicial notice of all the contents of its files, which included Dr. Matos-Martinez's and Dr. Joseph's medical examination certificates. Both doctors attested that appellant was having suicidal ideations and was at high risk of self-harm because of his previous suicide attempt. However, Dr. Matos-Martinez contradicted his certification at the commitment order hearing. He testified that appellant never had suicidal ideations during his time at the hospital, never threatened or attempted to hurt himself while in the hospital, and he had no knowledge of appellant's prior suicide attempt. In fact, the only evidence of appellant's prior suicide attempt came from appellant, who maintained that he was no longer having suicidal thoughts or ideations. Moreover, it was undisputed that appellant was not aggressive, never threatened others, or needed emergency medication. And besides refusing to take his medications, he was cooperative with hospital staff, followed the rules, and was compliant with other forms of treatment.

Here, the only evidence indicating that appellant had suicidal ideations upon admission to the hospital are the allegations in the doctors' certifications. "However, an expert's opinion recommending involuntary commitment must be supported by the factual

bases on which it is grounded and not simply recite the statutory criteria." *J.M. v. State*, 178 S.W.3d 185, 193 (Tex. App.—Houston [1st Dist.] 2005, no pet.); *State ex rel. E.R.*, 287 S.W.3d 297, 302–03 (Tex. App.—Texarkana 2009, no pet.) (same). In *J.M.*, the Houston court of appeals found that medical records indicating that the appellant had threatened suicide before her hospitalization were insufficient to prove an overt act or a continuing pattern of behavior under § 574.034 because "no specific details were provided about the purported threats of suicide made by [appellant] before her admission to" the hospital. 178 S.W.3d at 193–94 ("The record does not reveal exactly when the threats were made, specifically to whom they were made, under what circumstances the threats were made, or their severity."). Similarly, here, both doctors' certifications provided no details about appellant's suicidal ideations or past suicide attempt. Therefore, by themselves, the doctors' certifications are insufficient to show that appellant is likely to cause serious harm to himself. *See id.*; *In re C.O.*, 65 S.W.3d at 181; *see also State ex rel. B.A.*, No. 12-16-00183-CV, 2016 WL 4628106, at *3 (Tex. App.—Tyler Sept. 7, 2016, no pet.) (mem. op.) (finding insufficient evidence of overt act or pattern of behavior that appellant would hurt himself because the expert doctor "offered no specific evidence" that the appellant "posed a substantial threat of harm to herself or that she demonstrated any actual dangerous behavior manifested by some overt act or threats in the recent past").

Other testimony by Dr. Matos-Martinez was likewise insufficient to show a recent overt act or continuing pattern of behavior that appellant is likely to cause serious harm to himself. When asked why he believes appellant poses a danger to himself, Dr. Matos-Martinez primarily testified about how appellant refused to take his prescribed medications. However, Texas courts have consistently held that refusal of medication

11

alone is insufficient evidence of an overt act or a continuing pattern of behavior. *See State ex rel. E.R.*, 287 S.W.3d at 306; *J.M.*, 178 S.W.3d at 194; *see also State ex rel. G.H.*, No. 12-17-00310-CV, 2018 WL 345788, at *7 (Tex. App.—Tyler Jan. 10, 2018, no pet.) (mem. op.). While Dr. Matos-Martinez stated that appellant "could" harm himself later, potential harm is insufficient to uphold a commitment order. *See J.M.*, 178 S.W.3d at 193; *In re C.O.*, 65 S.W.3d at 181–82 (holding that physician's testimony that the appellant "*may* cause serious harm to others" but failure to "state any facts that would justify such a conclusion" was legally insufficient to prove a recent over act to support involuntary commitment); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi–Edinburg 1992, no writ) ("Bare psychiatric expert opinion of a 'potential danger' to others is insufficient to support a commitment.").

Considering the evidence, we hold that the State failed to present evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood that appellant is likely to cause serious harm to himself. *See State ex rel. D.L.S.*, 446 S.W.3d at 517 (holding that the evidence was factually insufficient to show the appellant was likely to cause serious harm to himself primarily because there was no evidence that the appellant had "ever attempted suicide or expressed any form of suicidal ideation," "was in bad health, malnourished, involved in violent criminal activity, or otherwise recklessly placing himself into situations where a substantial risk of bodily harm would befall him"); *State ex rel. J.W.*, 312 S.W.3d 301, 306 (Tex. App.—Dallas 2010, no pet.) (finding that there was no evidence of a recent overt act or continuing pattern of behavior showing that appellant was likely to cause serious harm to herself because there was no evidence in the record that appellant was malnourished or suicidal); *J.M.*, 178 S.W.3d at

12

194–95 (finding evidence of appellant's prior suicide threats insufficient to establish a recent overt act or pattern of behavior to support commitment because "no specific details were provided about the purported threats of suicide" and no other evidence was presented as to how appellant was a danger to herself); *In re C.O.*, 65 S.W.3d at 181–82; *see also State ex rel. B.A.*, 2016 WL 4628106, at *3.

### ii.     Physical Deterioration

There was also insufficient evidence of an overt act or pattern of behavior showing appellant's deterioration of his ability to function independently. No evidence was presented as to how appellant's mental illness prevented him from taking care of himself or hindered his ability to function independently. *See State ex rel. J.W.*, 312 S.W.3d at 307 (finding that there was no evidence that appellant was experiencing substantial deterioration of her ability to function independently in part because there was no evidence in the record that appellant "could not provide for her own food, clothing, or health"); *J.M.*, 178 S.W.3d at 195–96 (finding evidence of appellant's poor hygiene and "refusal to talk to the staff at the hospital" insufficient acts to establish overt act or pattern of behavior to support commitment showing deterioration of appellant's ability to function).

Dr. Matos-Martinez testified that appellant had been admitted to the hospital before. However, as mentioned, an expert's opinion recommending involuntary commitment must be supported by the factual bases on which it is grounded. *J.M.*, 178 S.W.3d at 193; *State ex rel. E.R.*, 287 S.W.3d at 302–03. Dr. Matos-Martinez provided no details about appellant's prior admissions, nor explained how his prior admissions were relevant to this case. *See J.M.*, 178 S.W.3d at 193; *Johnstone v. State*, 961 S.W.2d 385, 389 (Tex. App.—Houston [1st Dist.] 1997, no writ) ("We note that in *Broussard*, even

the patient's repeated admissions to mental institutions for the same condition was held insufficient to show a continuing pattern of behavior."); *Broussard v. State*, 827 S.W.2d 619, 622 (Tex. App.—Corpus Christi–Edinburg 1992, no writ) (holding that evidence of the appellant's "continuing delusional behavior" and multiple hospital visits was insufficient to "show the deterioration of her ability to function" and was merely evidence which reflected that she was mentally ill); *see also State ex rel. G.H.*, 2018 WL 345788, at *7 (providing that appellant's previous hospitalizations for his mental illness were insufficient to demonstrate overt act or pattern of behavior because it was simply evidence that appellant was mentally ill).

In sum, we hold that the evidence is legally and factually insufficient to support the trial court's order of commitment because the State failed to present evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the likelihood that appellant will cause serious harm to himself or tends to show the deterioration of his ability to function independently. We sustain appellant's first issue.

## B.     Order for the Administration of Psychoactive Medication

By his second issue, appellant argues that because the evidence is legally and factually insufficient to support the trial court's order of a temporary commitment, the evidence is also insufficient to support the order to administer psychoactive medications. We agree. In the absence of a valid order for temporary or extended mental health services, the order authorizing the administration of psychoactive medication is not authorized by statute. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1). Because

14

we found that there is legally and factually insufficient evidence to support the trial court's order of temporary commitment, we sustain appellant's second issue.[5] *See id*.

## VI. CONCLUSION

The State presented an expert physician who contradicted his own medical certification at the commitment hearing and otherwise failed to provide evidence of an overt act or pattern of behavior that showed appellant was at risk to himself or the deterioration of his ability to function independently. In short, the State failed to prove its case. As this Court stated in *Broussard*, while we are reluctant to deny court-ordered treatment to a man who is mentally ill, we cannot lower the requirements imposed under § 574.034(a) of the Health and Safety Code. 827 S.W.2d at 622. The State has a strong interest in protecting the mental health of its citizens; however, it also has a strong interest in preserving the due process rights of one of its most vulnerable populations. *See State ex rel. D.L.S.*, 446 S.W.3d at 514; *Johnstone*, 961 S.W.2d at 390 (Cohen, J., concurring). Accordingly, the judgment of the trial court is reversed, and judgment is rendered denying the State's petition for temporary court-ordered mental health services and order to administer medications to appellant.

JON WEST
Justice

Delivered and filed on the
30th day of October, 2025.

---

[5] Appellant argues in the alternative that Dr. Matos-Martinez's testimony was conclusory and insufficient to uphold the order to administer psychoactive medications. Because we have resolved this issue in favor of appellant, we need not address this argument. *See* TEX. R. APP. P. 47.1.