Based on these statements in the affidavit, the magistrate needed no clairvoyance to infer the purpose of the requested blood sample, even if it were not specified in the affidavit itself. It would be nonsensical to ask a magistrate to ignore the commonly known role that blood testing plays in driving-while-intoxicated offenses. The suggestion that Webre's blood would be used by law enforcement officials for any purpose besides testing for evidence of an intoxication offense defies logic, and we reject the invitation to apply such an imaginative interpretation to this affidavit. As the State points out, failure to state the obvious is no reason to invalidate a warrant. *Lagrone v. State,* 742 S.W.2d 659, 662 (Tex.Crim.App.1987).

**The STATE of Texas for the Best Interest and Protection of E.D.**

**Nos. 05–11–00538–CV, 05–11–00539–CV.**

Court of Appeals of Texas, Dallas.

Aug. 8, 2011.

Deborah Farris, Dallas, TX, for Appellant.

Craig Watkins, Dallas County District Attorney, Michael R. Casillas, Assistant District Attorney–Chief Prosecutor, Dallas, TX, for Appellee.

Before Justices BRIDGES, LANG–MIERS, and MURPHY.

## OPINION

Opinion By Justice MURPHY.

E.D. appeals from a judgment for temporary in-patient mental health services (No. 05–11–0–538–CV) and an order to administer psychoactive medication (No. 05–11–00539–CV). In four issues, E.D. contends the evidence is legally insufficient to support the jury's and court's findings. We affirm.

## BACKGROUND

Dallas police officers picked up E.D. from a convenience store and took her to the emergency room at Parkland Hospital on April 7, 2011. According to the police report, E.D. was creating a disturbance at the store and police were called. Upon arrival, E.D. asked the officers to shoot her. She also was described as combative, hostile, shouting expletives, and spitting on the "techs." One of the officers completed an application for emergency detention citing as the reason E.D.'s request for the officers to shoot her.

Dr. Erika Navarro testified at trial as an accepted expert in the field of psychiatry. Dr. Navarro examined E.D. and also treated her at Presbyterian Hospital after E.D.'s transfer there. She described E.D. as a forty-five year old woman with a history of mental illness. She had been hospitalized previously in December of 2010 and had been in forensic psychiatric units in the past. Dr. Navarro testified that E.D.'s behavior at the Parkland emergency room was consistent with that described at the convenience store. As a result of her conduct, an emergency intermuscular injection was administered. The

injection contained an anti-psychotic, a sedative, and medication to counteract potential side effects. The following day, E.D. was admitted at Presbyterian Hospital. Navarro testified that while there, E.D. required emergency medication because of severe outbursts. E.D. also refused medications.

Dr. Navarro diagnosed E.D. with "schizo-affective disorder, bipolar-type," which is a mental illness. She described the condition as a brain disorder resulting in psychotic symptoms and mood disregulation. She explained psychotic symptoms cause the patient to hear voices or to have visual hallucinations; the patient believes the perceptions are real. She described the mood disregulation as intermittent episodes of severe depression and periods of severe manic behavior, which is a state of very high alertness and hyperactivity that interferes with the patient's sleep and ability to think clearly. She testified that E.D. has thought disorders and mood swings and is delusional. As to the incident at the convenience store, E.D. told Dr. Navarro that she was just going to get her food and was talking a lot and they told her to get out. She went out and "the next thing she knew" the police were there.

Dr. Navarro testified that E.D., as a result of her mental illness, is likely to cause serious harm to herself and to others. She identified E.D.'s aggressive behavior of yelling and screaming as putting her in a situation where people would attack her. As an example, she described an incident where E.D. attacked another patient because she thought the patient was harassing her. Yet, there was no evidence the person was doing anything to E.D. Another incident involved E.D. throwing her food tray across the room, which Dr. Navarro testified could incite someone not understanding E.D.'s condition to attack her. Other incidents that Dr. Navarro identified as evidence of potential harm to others include E.D.'s spitting and threats to hospital staff.

Dr. Navarro also opined that E.D. is not able to make rational and informed decisions as to whether to submit to treatment because of her severe and abnormal mental, emotional, or physical distress. She testified E.D. is deteriorating in her ability to function independently. She explained that E.D. had been living alone in an apartment without any family support. In that environment, E.D. does shower and eat, but she has no job; Dr. Navarro's concern is that because of her behavior, E.D. would not be able to maintain stable housing. Because of E.D.'s behavior requiring emergency medications that cause her to sleep, Dr. Navarro was unable to evaluate E.D.'s sleep pattern.

Dr. Navarro gave her belief that it would be in E.D.'s best interest to receive in-patient treatment at Presbyterian Hospital under court order and that no lesser restrictive alternatives were available because E.D. does not believe she has a mental illness or needs medications to control her aggressive behavior. She said E.D. is not able to organize her thinking enough to be able to live in society without causing harm to others or to function, keep a job, or keep a roof over her head, and it all has to do with E.D.'s delusional beliefs. E.D. is unable to control herself, and Dr. Navarro opined that, if released, E.D. would either assault someone or someone would assault her.

E.D. also testified. At first she refused to raise her hand to be sworn as a witness, but eventually complied. Similar to Dr. Navarro's assessment, E.D. testified that she was at the convenience store to buy a hot dog and soft drink and does not know why the police were called. She said she "was just sitting on the curb eating [her]

hot dog and diet coke." The police drove up and "tasered" her and "harassed" her. They "took [her] stuff" and "teased [her] about taking [her] stuff from [her]." She described the incident as talking with an employee and "a manager showed up and I guess he harassed her that she wasn't doing her job or something like that, that she was spending too much time talking with me; that's all." She testified the officer pulled her by the hair and that is when she said "why don't you just shoot me?" She was trying to figure out how to get cash from the ATM because she had two days to move because she refused to sign a lease. She refused to answer questions about whether she received disability or social security benefits or whether she had been hospitalized at Green Oaks in December. She described the doctors as trying to "railroad" her into taking medicine. She denied causing any disturbance at the hospital. She admitted throwing her food tray and said it was because the other patients were "scared to speak up that they weren't getting fed properly," and E.D. was upset. She did not recall banging on the walls. She said she talks to herself because "apparently some people get on their knees and they pray, and I apparently like to talk to myself, it's therapeutic for me. I like talking to myself." She also said she defended herself from another person who had disorders and attacked her. She denied having a mental illness and described herself as lucid. She testified she does not want to take psychiatric medications. She also testified she feels she is able to take care of herself and has been "clean and sober since 4–16–99."

A jury found E.D. met the criteria for court-ordered in-patient mental-health treatment. The trial court ordered E.D. to temporary in-patient mental-health services at Presbyterian Hospital for a period not to exceed ninety days. In a separate order, the trial court found E.D. met the criteria to order the administration of psychoactive medication. This appeal followed.

## DISCUSSION

On appeal, E.D. does not contest the jury finding that she suffers from mental illness, but contends in her first three legal-sufficiency issues that she is not a danger to others, there is no evidence of a recent overt act, and "there is no evidence that if she is not treated she would continue to suffer severe, emotional, or physical distress or continue to experience deterioration of her ability to function independently or be unable to make a rational decision as to whether or not to submit treatment." In her fourth issue, she asserts that had she not been wrongfully ordered to seek mental health services, there would be no need for a hearing on the application for psychoactive medication. E.D. "feels" she does not need medication and has a right to contest forced medication. The State did not file a timely brief and did not seek leave for an out-of-time brief, so there is no response before the Court.

### Judgment for In–Patient Mental Health Services

For the trial court to order temporary commitment of E.D., the jury was required to find by clear and convincing evidence that as a result of her mental illness, E.D. (1) is likely to cause serious injury to herself, (2) is likely to cause serious harm to others, or (3) is (a) suffering severe and abnormal mental, emotional, or physical distress, (b) experiencing substantial mental or physical deterioration of the ability to function independently, which is exhibited by the inability (excluding indigence) to provide for her basic needs, including food, clothing, health, or safety, and (c) unable to make a rational and informed decision

as to whether or not to submit to treatment. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a) (West 2010). Clear and convincing evidence sufficient to meet the requirements of subsection 574.034(a) must include expert testimony, unless waived, and evidence of a recent overt act or continuing pattern of behavior that tends to confirm (1) the likelihood of serious harm to the proposed patient or others; or (2) the proposed patient's distress and the deterioration of the proposed patient's ability to function. *Id.* § 574.034(d). Clear and convincing evidence is "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington,* 588 S.W.2d 569, 570 (Tex.1979) (per curiam).

In evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable fact finder could have formed a firm belief or conviction that the finding was true. *See In re J.F.C.,* 96 S.W.3d 256, 266 (Tex.2002). We resolve disputed fact questions in favor of the finding if a reasonable fact finder could have done so, and we disregard all contrary evidence unless a reasonable fact finder could not have done so. *City of Keller v. Wilson,* 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.,* 96 S.W.3d at 266.

The trial court rendered judgment on the jury's finding that as a result of E.D.'s mental illness E.D. will, if not treated, continue to suffer severe and abnormal mental, emotional, or physical distress and will continue to experience deterioration of her ability to function independently and is unable to make a rational and informed decision as to whether or not to submit to treatment. E.D. argues the evidence is legally insufficient because E.D. was living

independently and there was no evidence of a recent overt act "other than an unconfirmed incident at the convenience store," which is vague and inconclusive. She claims that Dr. Navarro answered "yes" to the general question of whether E.D. was deteriorating in her ability to function independently and was not asked to describe the basis for her answer. Citing *State ex rel. C.C., III,* 253 S.W.3d 888, 894 (Tex. App.-Dallas 2008, no pet.), she adds that E.D.'s refusal to take psychiatric medication does not demonstrate deterioration in E.D.'s ability to function independently.

E.D. also argues the evidence is legally insufficient to support a finding that she was a danger to others. Because only four jurors answered affirmatively that E.D. was likely to cause serious harm to others, the trial judge deemed it a vote of "no." Thus, there was no finding E.D. was a danger to others. We therefore address only E.D.'s third issue contesting the evidence to support the jury's finding that she was deteriorating in her ability to function independently. As part of this discussion, we also address E.D.'s second issue regarding the sufficiency of the evidence to establish a recent overt act under subsection 574.034(d) of the health and safety code. *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(d) (in addition to expert testimony, state required to prove "a recent overt act or continuing pattern of behavior that tends to confirm" patient's "distress and the deterioration of [patient's] ability to function").

The State can establish an overt act by evidence of a recent act by E.D., either physical or verbal, that can be perceived objectively and is to some degree probative of the jury's finding. *See State v. K.E.W.,* 315 S.W.3d 16, 24 (Tex.2010). E.D.'s words are overt acts within the meaning of section 574.034(d). *Id.* at 22. Statements made by E.D. can be relevant

both to determining whether she is mentally ill and also to predicting what actions she might or will take in the future as a result of such mental illness. *Id.* The statute also requires evidence of an overt act that "tends to confirm" E.D.'s distress and the deterioration of her ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d). " 'Tends' means 'to have leaning,' 'to contribute to' or 'have a more or less direct bearing or effect.' " *K.E.W.*, 315 S.W.3d at 23 (citing BLACK'S LAW DICTIONARY 1507 (8th ed. 2004) and WEBSTER'S NEW UNIVERSAL UNABRIDGED DICTIONARY 1507 (8th ed. 2004)).

Dr. Navarro testified to several recent overt acts of E.D., both physical and verbal, that tend to confirm E.D.'s distress and deterioration of her ability to function. She compared E.D.'s behavior at the Parkland emergency room with that described at the convenience store, which included yelling, spitting, and verbal threats. She also told the officers to shoot her. Because of the severity of E.D.'s outbursts, she required emergency medication on more than one occasion. Dr. Navarro also explained that E.D.'s aggression to others, which included an attack on another patient, places others in danger and puts E.D. at risk of being attacked by someone not understanding her condition. E.D. also believes she is in the film industry and that several film companies are persecuting her to impede her success as a director. Dr. Navarro stated that this misperception that people are acting against her incites E.D.'s anger, and she "lunges at people that she thinks are wanting to harm her." Dr. Navarro expressed concern that because of her behavior, E.D. would not be able to maintain stable housing. E.D. in fact testified she was at the convenience store trying to get money to move in two days because of her dispute over housing and her refusal to sign a lease.

We recognize that section 574.034 excepts indigency as a basis for finding a person cannot provide for her basic needs. TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2)(C)(ii). Dr. Navarro does not rely on E.D.'s lack of job, however, as the basis for her conclusions. Rather, Dr. Navarro explained that because of E.D.'s delusional beliefs, she is unable to organize her thinking, to live in society without causing harm to others, to keep a job, or to keep a roof over her head. Dr. Navarro opined that, if released, E.D. would either assault someone or someone would assault her. E.D. confirmed through her own testimony that she had acted aggressively; her explanation was that she was protecting herself. She also did not understand why the police officers had been called to the convenience store. E.D. denied having a mental illness and described herself as lucid. The jury heard all of this evidence before making its findings.

Dr. Navarro's expert opinions and recommendations were more than mere conclusions. *See T.G. v. State,* 7 S.W.3d 248, 252 (Tex.App.-Dallas 1999, no pet.). Contrary to E.D.'s assertion, Dr. Navarro did more than answer "yes" to a general question regarding the deterioration of E.D.'s ability to function. Moreover, Dr. Navarro's conclusions, as detailed, were based on more than E.D.'s refusal to take medication. The evidence supporting the factual bases for her opinions was such that a reasonable fact finder could have formed a firm belief or conviction that E.D.'s distress and her ability to function was deteriorating, particularly with regard to her inability to provide for her basic needs of health and safety. We conclude the evidence supports the jury's findings, and we overrule E.D.'s second and third issues.

### Order to Administer Psychoactive Medication

E.D. complains in her fourth issue about the legal sufficiency of the evidence to

support the medication order. Once the trial court issued its order for in-patient mental health services, the court could issue an order authorizing the administration of one or more classes of psychoactive medications. TEX. HEALTH & SAFETY CODE ANN. § 574.106(a). To do so, the court had to find by clear and convincing evidence that (1) E.D. lacked the capacity to make a decision regarding the administration of the proposed medication and (2) treatment with the proposed medication would be in her best interest. *Id.* § 574.106(a–1).

Although E.D. asserts a legal-sufficiency challenge to the medication order, the basis for the challenge is that raised in her first three issues. She claims that had the order for in-patient confinement not been issued wrongfully, there would be no need for the hearing to determine medication. Because we have resolved E.D.'s second and third issues against her, we need not address issue four. *See* TEX.R.APP. P. 47.1.

### CONCLUSION

The evidence is legally sufficient to support the trial court's judgment for in-patient mental health services, and we therefore affirm the judgment. Because E.D.'s challenge to the trial court's order to administer psychoactive medication was premised on the validity of the judgment, we also affirm the order. As a result, we need not reach E.D.'s remaining issue. *See* TEX.R.APP. P. 47.1.