**AFFIRM and Opinion Filed April 5, 2019**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-18-01452-CV
### No. 05-18-01453-CV

## IN THE BEST INTEREST AND PROTECTION OF B.J., Relator

**On Appeal from the Probate Court No. 3**
**Dallas County, Texas**
**Trial Court Cause Nos. MI-18-03203 & MED-18-80461**

## MEMORANDUM OPINION

Before Chief Justice Burns and Justices Molberg and Nowell
Opinion by Chief Justice Burns

B.J. appeals from a judgment committing her to temporary inpatient mental health services and an order permitting her psychiatrist to administer psychoactive medication during the term of her commitment. In her appeal of the commitment judgment, appellant contends the trial court's findings that she was likely to cause serious harm to herself or others are not supported by legally and factually sufficient evidence. In her appeal of the medication order, appellant contends the medication order should be reversed because it depends upon the insufficiently supported commitment judgment. We affirm both cases.

### BACKGROUND

On October 25, 2018, Dr. Muhammad Haqqani, one of appellant's treating psychiatrists, filed an application for temporary court-ordered mental health services for appellant and a supporting physician's certificate. On that same date, the State filed a motion for an order of

protective custody requesting that appellant be detained at Dallas Behavioral Health Hospital ("DBHH" hereinafter) pending a probable cause hearing. The trial court granted the State's motion and signed an order of protective custody pending trial. On October 26, 2018, Dr. Haqqani filed an application to administer four types of psychoactive medication to appellant. On that same date, a second psychiatrist treating appellant, Dr. Bachir Debba, filed a supporting physician's certificate.

Both Haqqani and Debba diagnosed appellant with schizoaffective disorder, bipolar type, and each psychiatrist certified that appellant was mentally ill, was likely to cause serious harm to herself or others, was suffering severe and abnormal mental, emotional or physical distress, was deteriorating in her ability to function independently and unable to provide for her basic needs, and was unable to make a rational and informed decision regarding treatment. Haqqani stated he had been treating appellant for twenty-seven days. He described appellant as psychotic, unable to care for herself, and noncompliant with medications. According to Haqqani, appellant believed hospital staff members were sexually assaulting her in her sleep, cutting her hair, and filing down her teeth and nose. Appellant believed an "electrostimulator" had been implanted in her brain. Haqqani further described appellant as unwilling to bathe because she wanted to preserve DNA evidence of the repeated sexual assaults.

Debba certified he had been treating appellant for twenty-eight days. Debba reported that on October 26, 2018, appellant had told him that an electrostimulator had been implanted in her head in 2013, that she was being stalked by white men and white women, and that she has been detained for reporting she had been raped. Debba stated his opinion that appellant was noncompliant with taking her medication, was psychotic, and was unable to care for herself. Debba stated that appellant believed she was being repeatedly raped in her sleep, she had called the police several times, she was refusing to bathe because she did not want to wash away DNA

evidence, she was paranoid of others, and was verbally aggressive. Debba described appellant as disheveled, anxious, having disorganized thoughts, persecutory delusions, and exhibiting poor insight and judgment.

On November 15, 2018, the trial court conducted hearings on the pending applications. After hearing testimony from Dr. Haqqani and appellant and considering the physician certificates on file, the trial court granted the commitment application and committed appellant for up to ninety days. Immediately following the commitment hearing, the trial court heard testimony from Haqqani and appellant and then granted the application for an order to administer psychoactive medication during the term of the commitment.

## STANDARD OF REVIEW

We apply the same standard of review to both the commitment judgment and the order to administer psychoactive medication. *State ex rel. D.W.*, 359 S.W.3d 383, 385 (Tex. App.—Dallas 2012, no pet.). Both orders must be supported by clear and convincing evidence that shows appellant's mental health meets specific statutory criteria. *Id*.

"Clear and convincing evidence is 'that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *State ex rel. M.P.*, 418 S.W.3d 850, 853 (Tex. App.—Dallas, no pet.) (quoting *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979 (per curiam)). In determining whether evidence is legally and factually sufficient to meet the standard of clear and convincing evidence, we apply a heightened standard of review. *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In reviewing for legal sufficiency the trial court's findings under a "clear and convincing evidence" standard, we consider all of the evidence in the light most favorable to the trial court's findings to determine whether a reasonable factfinder could have formed a firm belief or conviction that the findings were true. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010). We assume the trial court resolved

disputed facts in favor of its findings if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *Id.* In our factual sufficiency review, we give due consideration to the evidence that the factfinder could reasonably have found to be clear and convincing and then determine whether, based on the entire record, any disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that the factfinder could not reasonably have formed a firm belief or conviction regarding the truth of the allegations. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002).

## ORDER OF INVOLUNTARY COMMITMENT

The criteria for committing a proposed patient for court-ordered temporary inpatient mental health services is set forth in Section 574.034(a) of the health and safety code::

> The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:
>
> (1) the proposed patient is a person with mental illness; and
>
> (2) as a result of that mental illness the proposed patient:
>
>> (A) is likely to cause serious harm to the proposed patient;
>> (B) is likely to cause serious harm to others; or
>> (C) is:
>>> (i) suffering severe and abnormal mental, emotional, or physical distress;
>>> (ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and
>>> (iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034(a).

Clear and convincing evidence under section 574.034(a) must include expert testimony and, unless waived, "evidence of a recent overt act or a continuing pattern of behavior that tends to confirm" the proposed patient is likely to cause serious harm to herself or to others or is

exhibiting distress and deterioration of her ability to function. *See id.* at § 574.034(d). An "overt act" within the meaning of section 574.034(d) includes both physical actions and verbal statements. *K.E.W.*, 315 S.W.3d at 24. Appellant's verbal statements can be relevant to both determining whether she is mentally ill and also to predicting what actions she might take in the future as a result of her mental illness. *Id.* at 22. A recent overt act must be to some degree probative of the trial court's finding, but it need not be of such character that the overt act standing alone would support the finding. *Id.* at 24. The recent overt act or continuing pattern of behavior must relate to the criteria on which the judgment is based. *D.W.*, 359 S.W.3d at 386. The expert testimony must include not only the expert's opinion that the proposed patient should be committed but also the factual basis for the expert's opinion. *Id.* Merely showing that an individual is mentally ill and in need of hospitalization is not sufficient. *State ex rel. C.C., III*, 253 S.W.3d 888, 893 (Tex. App.—Dallas 2008, no pet.).

At the beginning of the trial, appellant requested a new attorney or else to represent herself because her appointed counsel refused to present "extremely relevant" evidence showing that she was being assaulted and raped at DBHH while she was unconscious, that her nose was being shortened, and that she was being poisoned. While Dr. Haqqani was testifying, appellant repeatedly interrupted, including at one point stating she was being detained for reporting to the police that she was raped at DBBH. Eventually, the trial court decided to remove her for the remainder of Haqqani's testimony. After appellant returned and testified, she interrupted the State's final argument.

Dr. Haqqani, the State's only witness, testified he is a board-certified psychiatrist and had been examining appellant two-to-four times per week since October 3rd or 4th of 2018. He had seen her on the two days preceding the hearing. On days when Haqqani did not see her, appellant was examined by his nurse practitioner.

Haqqani testified appellant is a thirty-year-old female suffering from schizoaffective disorder, bipolar type. On September 29, 2018, appellant was transferred to DBHH from Parkland Hospital where she had been brought by police on a mental health warrant because she was found wandering in the street, claiming that she had been sexually assaulted about seventeen times. Haqqani described appellant as very paranoid and talking nonsense. He has observed her responding to internal stimuli by talking to herself as if she is hearing voices although she would deny that when questioned directly.

Over the course of his testimony, Haqqani described appellant's paranoid or delusional behavior. Appellant believed she was being sexually assaulted every day in the hospital and that hospital staff were cutting her hair and shortening her nose while she slept. Haqqani testified appellant had not bathed in the two months she had been confined in the hospital because she did not want to wash away any DNA evidence of the alleged sexual assaults. Her telephone use had to be restricted to calls to her attorney because she was making numerous 911 emergency calls to the DeSoto Police Department to report sexual assaults. Haqqani believed police had responded to one of her calls and come to the hospital. Appellant believed people were trying to poison her. She threw supposedly poisoned water at a nurse. Appellant believes she has an electrostimulator implanted in her brain. Haqqani described appellant as aggressive, spitting on nursing staff, throwing water at them, and cursing at people. Haqqani testified appellant used racial slurs to provoke people. In one incident, appellant verbally provoked a male patient until the patient physically assaulted her, requiring the hospital to separate the patients into separate units.

Haqqani offered his opinion that appellant is mentally ill and is likely to cause serious harm to herself, serious harm to others, and she is suffering severe, abnormal, mental, emotional, or physical distress. He affirmed his belief that appellant is deteriorating in her ability to function

independently and he testified she is unable to make a rational and informed decision as to whether to submit to treatment.

Haqqani denied believing that appellant was experiencing daily sexual assaults and first testified to his psychiatric opinion that all of appellant's fixations regarding sexual assault and rape were delusions. Haqqani testified Parkland Hospital documents showed appellant was given a sexual assault nurse examination at Parkland and the results were normal. He admitted he did not have the details of that and was not one hundred percent certain about what Parkland had done for appellant. He admitted he had not performed a sexual assault examination of appellant.

When asked if the hospital investigated all claims of sexual assault or rape that appellant had made, Haqqani answered that she is monitored by cameras and staff all the time while she has been in DBHH. Haqqani had not received any report of appellant being sexually assaulted during her stay at DBHH. After defense counsel confronted Haqqani with documents showing that on September 11, 2018, an emergency room physician had diagnosed and treated appellant for sexual assault and had prescribed four medications for her that are commonly given to sexual assault victims, Haqqani admitted it was possible that not all of her reported sexual assaults from before her hospitalization at DBHH were delusions.

Haqqani denied that anyone had cut appellant's hair or cut her nose during her stay in DBHH. Haqqani knows appellant does not have an electrostimulator implanted in her brain because appellant had undergone a physical examination when she was admitted to DBHH and that examination did not reveal any foreign device in her body.

Haqqani answered negatively when asked if appellant was able to take care of activities of daily living, including eating, sleeping, and hygiene. He stated he would be concerned about her causing serious harm to herself if she was not in a structured environment such as the hospital

because she is not taking care of her hygiene, is very delusional, and is provoking and aggravating other people to the point she might be assaulted.

Haqqani testified, without elaborating, that appellant has a history of mental illness and would not be a candidate for any type of outpatient treatment at this time. Haqqani believed she was not compliant with any outpatient treatment or medication prior to coming to DBHH. Appellant had not agreed to take any psychiatric medication while at DBHH. It was his expert opinion that appellant should be required to have further observation and treatment in a structured environment such as DBHH and that this was the least restrictive alternative. Haqqani stated that he had discussed with appellant the possibility of further hospitalization at DBHH and she had responded that she believes she is not mentally ill. Haqqani described appellant as being focused on her allegations about sexual assault and physical mutilation.

When asked why he believed appellant was likely to cause serious harm to herself, Haqqani testified appellant's extremely poor hygiene resulting from her refusal to shower or bathe for two months to preserve DNA evidence of sexual assaults created the possibility that she might develop a urinary tract infection. Haqqani also mentioned appellant was not using sanitary napkins during her menstrual cycle. Lastly, Haqqani cited appellant's efforts to provoke other people as evidence that she is a danger to herself.

When asked how appellant is likely to cause serious harm to others, Haqqani testified appellant is at times aggressive, spits on nursing staff, throws water at them, and curses at people. Haqqani testified appellant's 911 calls to the DeSoto police could disrupt their services. Haqqani cited appellant's use of racial slurs and the attack upon her by the male patient she had provoked. The assault was captured on video. Haqqani, admitted he was not present when the assault occurred and was basing his testimony on the video and reports that have been made available to him. He admitted the video did not show her strike the patient who attacked her. He admitted she

had not physically struck any patients or staff and her physical aggression was limited to spitting, throwing water, and posturing. He agreed appellant has not endorsed any suicidal or homicidal ideation.

Appellant testified and strongly disagreed with Haqqani's diagnosis that she was suffering from mental illness. She testified she had attention deficit hyperactivity disorder ("ADHD") and had been taking amphetamine for ADHD since she was twenty-three years old. She admitted having seen several psychiatrists for ADHD and she claimed to be under the care of Houston psychiatrist Aaron Fink.

Regarding her allegations of sexual assault, appellant testified:

Every crime I reported has occurred. Two detectives were assigned in Dallas prior to me being detained. I have been unable to follow up with those detectives because I have been at Dallas Behavioral Center under a detention as what you call a Proposed Patient. I have been losing consciousness, getting raped and assaulted daily. I have not showered because you are not to shower after a sexual assault until you do examination because then no areas can be collected from areas that you wash for that reason.

Appellant denied having any desire to harm herself or others other than to follow up with the police about her sexual assault allegations. Appellant admitted to being involved in altercations with another patient while at DBHH. Appellant admitted she had met with two police officers while she was at DBHH. She indicated that if she was discharged from the hospital, she would either return to her sister's residence or else go to her mother's vacant house in Conroe, Texas. She testified she would be willing to take medication prescribed by Dr. Aaron Fink.

In her appeal from the commitment judgment, appellant asserts two issues contending the evidence submitted to the trial court does not support findings that she is likely to cause serious harm to herself or to others. She contends the videotaped confrontation with the male patient is indicative of his own inability to control his behavior. She points out that there was no evidence of other patients or staff reacting to her speech with aggression. Likewise, appellant questions

–9–

what harm or injury could occur to herself or others from her spitting, throwing water, and cursing. While admitting the behavior is "immature and uncouth," appellant contends it does not satisfy the State's burden to prove by clear and convincing evidence that she poses a substantial likelihood of harm to others. Pointing to the evidence that she had been diagnosed as having undergone a sexual assault and prescribed medication commonly given to victims of sexual assault, appellant contends that her complaints about being sexually assaulted might not be entirely delusional and might justify, at least initially, her refusal to tend to her hygiene. Finally, appellant contends her refusal to take psychiatric medication is not sufficient evidence of a possibility of harm to herself or others to justify an involuntary commitment.

We need not determine whether the trial court's findings of the likelihood of serious harm are supported by sufficient evidence. The trial court may order a person to receive temporary court-ordered mental health services upon a showing by clear and convincing evidence that the person is mentally ill and that as a result of the mental illness, the person meets any one of three statutory criteria set forth in section 574.034(a)(2)(A–C). *See* TEX. HEALTH & SAFETY CODE ANN. § 574.034(a)(2); *State ex rel. T.M.*, 362 S.W.3d 850, 852 (Tex. App.—Dallas 2012, no pet.). The trial court found that the State had proven by clear and convincing evidence that appellant was mentally ill and her mental state met all three of the statutory criteria.

Appellant does not challenge the trial court's finding that she is mentally ill. Furthermore, she does not challenge the trial court's finding that the criterion of §574.034(a)(2)(C) has been met: that she is suffering severe and abnormal mental, emotional, or physical distress; she is deteriorating in her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety; and she is unable to make a rational and informed decision as to whether or not to submit to treatment.

These unchallenged findings are all that section 574.034(a) requires to uphold the trial court's determination to commit appellant to treatment. *See State ex rel. E.D.*, 347 S.W.3d 388, 391–93 (Tex. App.—Dallas 2011, no pet.) (affirming judgment for inpatient mental health services where patient did not contest finding of mental illness and evidence supported finding that patient met distress and deterioration criterion of section 574.034(a)(2)(C)); *see also State for Best Interest and Protection of H.V.*, No. 04-18-00291-CV, 2018 WL 6069861, at *5, n.4 (Tex. App.—San Antonio, Nov. 21, 2018, no pet.) (not designated for publication) (because criteria under section 574.034(a)(2) are listed in the disjunctive, there was no need to address trial court's finding under section 574.034(a)(2)(A) after appellate court found evidence legally and factually sufficient under section 574.034(a)(2)(C)).

The State's evidence detailed hereinabove shows appellant is paranoid and delusional. She believes she is being continually sexually assaulted, having her nose shortened and her hair cut, has an electrostimulator implanted in her brain, and is being poisoned by the nursing staff. With the sole possible exception of sexual assaults she allege may have occurred prior to her hospitalization, none of those beliefs have any factual basis.

As a result of her paranoia and delusions, the evidence shows appellant is deteriorating in her ability to function independently. She has not bathed for two months, spits on nurses and hurls "poisoned" water at them, refuses to take medication, and is so verbally aggressive toward others that she is in danger of being assaulted. The evidence further shows that she does not understand that she is mentally ill and has refused to take any medication, preferring instead to focus on her delusions of sexual assault and physical mutilation. Appellant's delusions, aggression toward others, refusal to attend to her hygiene, and inability to comprehend her need for treatment are recent overt acts and represent continuing patterns of behavior spanning two months of observation. We conclude the evidence is legally and factually sufficient to meet the standard of

clear and convincing evidence to show appellant is mentally ill and that she is suffering severe and abnormal mental, emotional, or physical distress; she is deteriorating in her ability to function independently, which is exhibited by her inability, except for reasons of indigence, to provide for her basic needs, including food, clothing, health, or safety; and she is unable to make a rational and informed decision as to whether or not to submit to treatment. *See M.P.*, 418 S.W.3d at 854–56 (poor personal hygiene and delusional reasons for not taking antipsychotic medications legally and factually sufficient to satisfy requirements of §574.034(a)(2)(C)); *E.D.*, 347 S.W.3d at 393 (evidence showing patient engaged in yelling, spitting, verbal threats, aggression toward others, possibility she could be attacked by someone not understanding her condition, and delusional beliefs leaving her unable to organize her thinking, live in society without harming others, and keep a job found legally and factually sufficient to meet requirements of §574.034(a)(2)(C)).

Because appellant does not contest the trial court's finding under §574.034(a)(2)(C) and the State's evidence supports the trial court's finding by clear and convincing evidence, we need not consider appellant's issues regarding the trial court's findings under the other two criteria for commitment. *See* TEX. R. APP. P. 47.1; *E.D.*, 347 S.W.3d at 391–93; *H.V.*, No. 04-18-00291-CV, 2018 WL 6069861, at *5, n.4.

### ORDER TO ADMINISTER PSYCHOACTIVE MEDICATIONS

As relevant to this case, the trial court may issue an order authorizing the administration of psychoactive medications to a person who "is under a court order to receive inpatient mental health services." TEX. HEALTH & SAFETY CODE ANN. § 574.106(a)(1). The order to administer may be issued "only if the court finds, by clear and convincing evidence after the hearing:

(1) that the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient." *Id*. at § 574.106(a-1).

–12–

The trial court conducted the trial on the application to administer psychoactive medication immediately after rendering its ruling on appellant's involuntary commitment. The Court took judicial notice of the commitment hearing, of the court's file, and of the order of commitment.

During the medication hearing, Dr. Haqqani again appeared as the State's only witness. He testified regarding four types of medications on State's Exhibit "A" he wanted to administer to appellant: an antidepressant, antipsychotic, anxiolytic/sedative/hypnotic, and mood stabilizers. He testified to the benefits and possible side effects of each class of drugs. He testified he believes the benefits of the medications outweigh the possible side effects and he will be able to monitor and adjust appellant's medications if side effects appear.

Haqqani indicated that antipsychotic medication would be used on a regular basis and the others would be administered as needed. He is not aware she has any allergies to the drugs. Haqqani offered his opinion that it is in appellant's best interest to take the medications, they will improve her condition, and her condition will not improve and continue to deteriorate if she does not take them. Haqqani reiterated his belief that appellant does not understand that she is mentally ill or that psychoactive medication is necessary. He has attempted to explain the benefits and risks of the medications, but she has not agreed to take them. Haqqani testified that appellant does not have the capacity to decide whether the medications should be administered to her because of schizoaffective disorder.

Appellant testified she had not taken the medications that Dr. Haqqani prescribed at the hospital because she has low blood pressure and a low pulse from being poisoned, she believes the medications are inappropriate, and she believes no one should be forced to take psychoactive medication for reporting or being a victim of sexual assault. Appellant testified she would be willing to see Dr. Aaron Fink and take medication for her ADHD. She testified she sees Dr. Fink periodically for treatment with amphetamine for ADHD. She stated that her amphetamine

treatments help her be more organized.  After hearing the testimony, the trial court granted the application to administer psychoactive medication in its entirety and made it coterminous with the commitment order.

On appeal, appellant's sole contention regarding the medication order is that it should be overturned if the Court overturns the commitment order.  Because we are upholding the commitment order, we overrule appellant's sole issue in cause no. 05-18-01453-CV.  *See E.D.*, 347 S.W.3d at 394 (affirming order to administer psychoactive medication where challenge to order was premised on validity of commitment judgment which court was upholding); *see also H.V.*, No. 04-18-00291-CV, 2018 WL 6069861, at *5 (upholding medication order where sole challenge was based on sufficiency of commitment order that appellate court was upholding); *Best Interest of J.L.*, No. 14-05-00360-CV, 2006 W.L. 56821, at *6 (Tex. App.—Houston [14th Dist.] Jan. 12, 2006, no pet.) (not designated for publication) (same).

## CONCLUSION

We affirm the trial court's involuntary commitment judgment and its order to administer psychoactive medication.


/Robert D. Burns, III/
ROBERT D. BURNS, III
CHIEF JUSTICE


181452F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

IN THE BEST INTEREST AND
PROTECTION OF B.J.

No. 05-18-01452-CV

On Appeal from the Probate Court No. 3,
Dallas County, Texas
Trial Court Cause No. MI-18-03203.
Opinion delivered by Chief Justice Burns.
Justices Molberg and Nowell participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**AFFIRMED**.

Judgment entered April 5, 2019.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE BEST INTEREST AND
PROTECTION OF B.J.

No. 05-18-01453-CV

On Appeal from the Probate Court No. 3,
Dallas County, Texas
Trial Court Cause No. MED-18-80461.
Opinion delivered by Chief Justice Burns.
Justices Molberg and Nowell participating.

In accordance with this Court's opinion of this date, the trial court's order is
**AFFIRMED**.

Judgment entered April 5, 2019.