**AFFIRMED and Opinion Filed October 26, 2022**



In The

**Court of Appeals**

**Fifth District of Texas at Dallas**

_____

## No. 05-22-00846-CV

_____

## IN THE INTEREST AND PROTECTION OF L.L.

**On Appeal from the County Court at Law No. 2**
**Hunt County, Texas**
**Trial Court Cause No. M-12309**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Goldstein

In this accelerated appeal, L.L. raises three issues challenging the trial court's separate orders (1) that L.L. be involuntarily committed for temporary inpatient mental health services and (2) that he be administered psychoactive medications. L.L. contends the evidence presented by the State at his commitment hearing is legally and factually insufficient to support the findings on which the order for temporary inpatient treatment is based. L.L. also contends that the trial court's order to administer psychoactive medication must be reversed because such an order cannot stand unless a proper order for inpatient mental health services is also in place. We affirm the trial court's orders.

# BACKGROUND

On August 8, 2022, a physician's certificate of medical examination for mental illness was issued after evaluation diagnosing L.L. with an "unspecified psychotic disorder" and recommended evaluation and pharmacotherapy.[1] The basis of the diagnosis was that L.L.: "Assaulted father in the context of paranoid belief that he was being solicited for sex;" was "paranoid about providers in hospital;" was "refusing to eat in jail with 15 lb weight loss in 23 days;" and "insight and judgment impaired."

On August 9, 2022, the State filed an application for court-ordered temporary inpatient mental health services based on the following facts: (1) L.L. assaulted his father "in context of paranoid belief that he was being solicited for sex" and (2) refusing to eat in jail, acting on paranoid delusions, and losing fifteen pounds in twenty-three days. The application was supported by the August 8, 2022 certificate of medical examination. That same day, the State filed an application for an order to administer psychoactive medication. On August 11, 2022, the court held a temporary probable cause hearing based upon the application for emergency commitment, supported by the certificate of medical examination and after L.L.'s

---

[1] Prior to the medical evaluation L.L. had been incarcerated due to an alleged family violence assault on his father. During his incarceration, based upon observations and a risk assessment conducted, an application for emergency commitment was sought and an order for issuance of a mental health warrant executed. The record contains notes of the observations and an August 7, 2022, physician's certificate of examination with addendum.

testimony, ordered continued treatment with the doctors able to determine when best to release him.

On August 18, 2022, L.L. was examined again and diagnosed with schizophrenia. The basis of the diagnosis was as follows:

> Patient was brought to hospital from Hunt County Jail on MIW for not eating due to paranoia and delusions. While under my care he has continued to display paranoia and disorganized thoughts and behavior. Stays away from windows, saying he can "sense" that people in cars 17 floors down have guns and may shoot him. He cannot maintain a coherent conversation. He has refused to stay in his room or use his bathroom due to paranoia about roommate. Refuses blood test to check his health after self-starvation. Refuses medications to help his thinking. Does not have insight into his behavior. Continues to eat restrictive diet in spite of losing 15 lbs from self-starvation in jail.

The court held hearings on August 22, 2022, on whether to commit L.L. for mental health services and whether to order treatment with psychoactive medication. L.L. attended remotely via Zoom.

At the commitment hearing L.L.'s father testified that L.L. hit him, resulting in L.L. being brought to jail. Father testified that L.L. had physically assaulted him before and had threatened Father by saying that he "wanted to break [Father's] bones." After L.L. hit Father, Father immediately reported the assault to police.[2]

Jana Campbell, a nurse supervisor at the Hunt County Jail, testified L.L. was refusing food and "did not want anything from the kitchen" because he "felt like

---

[2] Father also testified that L.L. had a previous history of unspecified mental illness, including during a prior incarceration being transferred to the pysch ward as well as a three day stay in Glen Oaks in December 2021.

maybe someone was putting something into his food." L.L. began eating fruit that Campbell provided, but he lost fifteen pounds while he was in jail from July 11 to August 5. Campbell became worried and reported L.L.'s weight loss[3].

Chad Stroud, an officer with the Hunt County Sheriff's office, testified that, after Campbell reported that she was worried about L.L., Stroud evaluated L.L., who "looked like he was deteriorating." Stroud contacted the district attorney to determine the status of L.L.'s case and determined the district attorney was "going to no action on the case." L.L. received a crisis assessment that recommended a higher level of care, and L.L. was transported to Parkland.

Bryan Kromenacker[4] testified that he is a medical resident in psychiatry at Parkland, and as a result of his psychiatric evaluation of L.L. he diagnosed L.L. with schizophrenia on August 11, 2022. Kromenacker testified L.L. exhibits symptoms of "very prominent" paranoia, disorganized thinking, difficulty communicating due to his disorganized thinking, and hallucinations. As far as hallucinations, Kromenacker testified L.L. claimed to have the ability to "sense metal." Kromenacker testified L.L. had no understanding or insight into his mental illness and was unable to make a rational, informed decision as to whether to submit to

---

[3] Records from the jail monitoring L.L.'s food intake and other observations were part of the record before the court.

[4] Dr. Kromenacker was offered by the State as an expert in the field of psychiatry and admitted over no objection. He testified that he had a personal interview with L.L. 20-30 minutes every day and observed him periodically throughout the day.

treatment and denies that it is mental illness. When asked what specific facts led Kromenacker to believe L.L. presented a risk of causing serious harm to himself, Kromenacker answered as follows:

> His paranoia and delusions cause him to have erratic behavior and a general inability to form organized thoughts and comprehend or process reality. It's just inherently dangerous being out in a world that does not have patience or tolerance for those kinds of things.

When asked to provide "specific facts that [L.L.] has exhibited," Kromenacker answered:

> While here at Parkland, he had one episode of overt aggression towards staff members while he was in the ED when he became frustrated. While on the inpatient unit, he's had episodes where he has become agitated when he becomes frustrated showing some signs of aggression, balling his fists, but it's not any violent episodes while on the unit.

When asked whether L.L. presented a risk of causing serious harm to others, Kromenacker answered, "Not that I have observed." Kromenacker testified L.L. was currently taking a multivitamin but refused other medications and, if L.L. was not treated, he would continue to experience deterioration of his ability to function normally. Kromenacker stated his opinion that it would take ninety days to provide the treatment necessary for L.L., and forty-five days of treatment would not be enough.

In describing L.L.'s specific behavior that would be "inappropriate or harmful," Kromenacker testified:

> In spite of losing weight while he was at the jail, one behavior is that he's refused any kind of medical workup. He's refused laboratory

testing, kind of the basic things that would be warranted for a medical workup and a psychiatric workup, such as self starvation.

He's required a very strict diet that he describes as vegan, and in spite of losing weight, he questions whether or not certain foods are vegan and he's not eaten all of his meals at times for this reason, which would further cause weight loss and harm in that regard.

And thirdly, because of his paranoia and delusions would center around his belief that he has kind of supernatural senses of others, being able to sense metal, being able to sense danger, I think that if he was in society at large, he would act in erratic ways due to those senses.

Kromenacker testified that, on the day L.L. went to jail, he "felt that his father had a weapon" and, though L.L. did not see a weapon, "he just had the sense."

At the conclusion of the hearing, the trial court made oral findings that (1) there was a recent act of violence, and L.L. was likely to cause serious harm to others and (2) L.L. was suffering severe and abnormal mental, emotional, or physical distress, and he was experiencing substantial mental or physical deterioration of his ability to function independently, which was exhibited by his inability, except for reasons of indigence, to provide for his basic needs including food, specifically. The court also orally ordered that L.L. "be detained for up to ninety days."

After concluding the August 22, 2022, final commitment hearing, the trial court conducted a final psychoactive medication hearing at which Kromenacker testified[5] L.L. lacked the capacity to make the decision regarding the administration of psychoactive medication because he did not believe he had a mental illness.

---

[5] Dr. Kromenacker was again offered by the State and admitted as an expert in the field of psychiatry over no objection.

–6–

Kromenacker testified that, if L.L. was not treated, he would continue to suffer severe mental, emotional, or physical distress, and he would continue to experience deterioration in his ability to function normally. At the conclusion of the hearing, the trial court orally found by clear and convincing evidence that L.L. lacked the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication was in L.L.'s best interest.

That same day, the trial court signed an order for temporary inpatient mental health services committing L.L. to Parkland for 90 days. The order contained findings that, as a result of mental illness, L.L. (1) was likely to cause serious harm to others and (2) was suffering severe and abnormal mental, emotional, or physical distress; was experiencing substantial mental or physical deterioration of his ability to function independently, which was exhibited by his inability, except for reasons of indigence, to provide for his basic needs including food, clothing, health, or safety; and was unable to make a rational and informed decision as to submit to treatment. The trial court also signed an order to administer psychoactive medication. This appeal followed.

## SUFFICIENCY OF THE EVIDENCE

In his first two issues, L.L. argues the evidence is legally and factually insufficient to support the judgment for temporary mental health services. Specifically, L.L. claims a reasonable factfinder could not have found the threat of harm to others was substantial and based on actual dangerous behavior manifested

by some overt act or threats in the recent past, and the lack of overt acts by L.L. was bolstered by his testimony that he does not intend to harm others and showed a reasonable factfinder could not have resolved the disputed evidence in favor of this finding.

Section 574.034 of the Health and Safety Code provides:

(a) The judge may order a proposed patient to receive court-ordered temporary inpatient mental health services only if the judge or jury finds, from clear and convincing evidence, that:

(1) the proposed patient is a person with mental illness; and

(2) as a result of that mental illness the proposed patient:

(A) is likely to cause serious harm to the proposed patient;

(B) is likely to cause serious harm to others; or

(C) is:

(i) suffering severe and abnormal mental, emotional, or physical distress;

(ii) experiencing substantial mental or physical deterioration of the proposed patient's ability to function independently, which is exhibited by the proposed patient's inability, except for reasons of indigence, to provide for the proposed patient's basic needs, including food, clothing, health, or safety; and

(iii) unable to make a rational and informed decision as to whether or not to submit to treatment.

TEX. HEALTH & SAFETY CODE ANN. § 574.034.

The heightened burden of proof, clear and convincing evidence, requires that we utilize a heightened standard of review.  *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002).  Clear and convincing evidence is "that measure or degree of proof which

will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *State v. Addington*, 588 S.W.2d 569, 570 (Tex. 1979) (per curiam). Evidence that merely exceeds a scintilla is not legally sufficient when the burden of proof is clear and convincing. *See In re J.F.C.*, 96 S.W.3d 256, 264–65 (Tex. 2002).

Satisfying the clear and convincing standard requires expert testimony, TEX. HEALTH & SAFETY CODE ANN. § 574.034(d), which includes the expert's opinion regarding the necessity of committing the patient, as well as the factual support for the opinion. *State v. K.E.W.*, 315 S.W.3d 16, 20 (Tex. 2010); *State ex rel. D.W.*, 359 S.W.3d 383, 386 (Tex. App.—Dallas 2012, no pet.). Additionally, satisfying the clear and convincing burden requires the State to provide evidence of a recent overt act or a continuing pattern of behavior that tends to confirm the distress and deterioration of the proposed patient's ability to function. TEX. HEALTH & SAFETY CODE ANN. § 574.034(d); *K.E.W.*, 315 S.W.3d at 20; *State ex rel. E.D.*, 347 S.W.3d 388, 392–93 (Tex. App.—Dallas 2011, no pet.) (evidence of a recent physical or verbal overt act that is probative of the jury's findings when perceived objectively, will satisfy the State's burden). Verbal statements as well as physical actions are "overt acts," *K.E.W.*, 315 S.W.3d at 24, and such verbal statements may support a finding of mental illness and predict future actions resulting from such mental illness. *Id.* at 22.

When evaluating evidence for legal sufficiency under a clear and convincing standard, we review all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *See In re J.F.C.*, 96 S.W.3d at 266. We resolve disputed fact questions in favor of the finding if a reasonable factfinder could have done so, and we disregard all contrary evidence unless a reasonable factfinder could not have done so. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005); *In re J.F.C.*, 96 S.W.3d at 266.

In conducting a factual sufficiency review, we consider the evidence that the factfinder could reasonably have found clear and convincing, and then based on the entire record, determine whether the factfinder could reasonably have formed a firm belief or conviction that the allegations in the application were proven. *In re J.F.C.*, 96 S.W.3d at 266; *State ex rel. M.P.*, 418 S.W.3d 850, 853 (Tex. App.—Dallas 2013, no pet.). We consider whether a reasonable factfinder could have resolved disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. "If in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.*

Here, the record shows L.L. was taken to the Hunt County Jail following his assault on his father. In jail, L.L. lost fifteen pounds in less than a month,

–10–

precipitating his transport to Parkland hospital. Kromenacker testified that he diagnosed L.L. with schizophrenia, and L.L. exhibits symptoms of "very prominent" paranoia, disorganized thinking, difficulty communicating due to his disorganized thinking, and hallucinations. Kromenacker further testified L.L. had no understanding or insight into his mental illness and was unable to make a rational, informed decision as to whether to submit to treatment. Kromenacker testified L.L. was currently taking a multivitamin but refused other medications and, if L.L. was not treated, he would continue to experience deterioration of his ability to function normally. Kromenacker stated his opinion that it would take ninety days to provide the treatment necessary for L.L.

After considering all the testimony in the light most favorable to the trial court's finding, we conclude the trial court could have formed a firm belief or conviction that L.L. was suffering severe and abnormal mental, emotional, or physical distress; was experiencing substantial mental or physical deterioration of his ability to function independently, which was exhibited by his inability, except for reasons of indigence, to provide for his basic needs including food, clothing, health, or safety; and was unable to make a rational and informed decision as to submit to treatment. Therefore, the evidence was legally sufficient to support the trial court's order committing appellant. *See In re J.F.C.*, 96 S.W.3d at 266.

In arguing that the evidence was factually insufficient to support the trial court's order committing him, L.L. asserts the "State's expert could testify to no

–11–

recent overt act committed by L.L. that would indicate probable harm to others by L.L." As set out above, quite apart from demonstrating that L.L. was likely to cause harm to others, the evidence showed L.L. suffered severe and abnormal mental distress; he experienced mental or physical deterioration of his ability to function independently, exhibited by his inability to provide for his basic needs, including food; and he was unable to make a rational and informed decision as to whether or not to submit to treatment. We conclude the trial court could have found this evidence clear and convincing and have formed a firm belief or conviction that the allegations in the petition were proven. Therefore, the evidence was factually sufficient to support the trial court's order committing appellant. *See id.* We overrule L.L.'s first and second issues.

In his third issue, L.L. challenges the legal and factual sufficiency of the evidence to support the trial court's order to administer psychoactive medication. Under section 574.106 of the health and safety code, the trial court may issue an order authorizing the administration of psychoactive medication to a patient who is under a court order to receive inpatient mental health services if the court finds by clear and convincing evidence that "the patient lacks the capacity to make a decision regarding the administration of the proposed medication and treatment with the proposed medication is in the best interest of the patient." TEX. HEALTH & SAFETY CODE ANN. § 574.106(a), (a-1)(1). As L.L. correctly points out, "A patient's success on the challenge of an order to administer psychoactive medication depends on her

success in her challenge of the order for temporary inpatient mental health services," citing *K.E.W. v. State*, 333 S.W.3d 850, 858–59 (Tex. App.—Houston [1st Dist.] 2010, no pet.).  L.L. asserts that, because the trial court erred in ordering temporary inpatient mental health services, the trial court therefore erred in entering an order to administer psychoactive medication.  Having concluded the trial court did not err in ordering temporary inpatient mental health services, we reject L.L.'s challenge to the order to administer psychoactive medication.  We determine the trial court's order to administer psychoactive medication was supported by clear and convincing evidence that was both legally and factually sufficient.  *See In re J.F.C.*, 96 S.W.3d at 266.  We overrule L.L.'s third issue.

We affirm the trial court's order committing L.L. to Parkland Hospital for a period not to exceed ninety days, and we affirm the order to administer psychoactive medication to L.L.

/Bonnie Lee Goldstein/
BONNIE LEE GOLDSTEIN
JUSTICE

220846F.P05

–13–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST AND
PROTECTION OF L.L.

No. 05-22-00846-CV

On Appeal from the County Court at
Law No. 2, Hunt County, Texas
Trial Court Cause No. M-12309.
Opinion delivered by Justice
Goldstein. Justices Myers and
Carlyle participating.

In accordance with this Court's opinion of this date, the trial court's order committing L.L. to Parkland Hospital for a period not to exceed ninety days is **AFFIRMED**, and the trial court's order to administer psychoactive medication to L.L.is **AFFIRMED**.

Judgment entered this 26th day of October 2022.